**In re Donald G. DEPUGH, Debtor.**

No. 08–37521–H4–13.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

June 26, 2009.

John Ernest Smith, John E. Smith & Associates, Houston, TX, for Debtor.

**MEMORANDUM OPINION REGARD-ING: (I) DEBTOR'S OBJECTION TO LVNV FUNDING LLC'S PROOF OF CLAIM NUMBERS 12, 13, 14, AND 15; AND (II) MOTION OF LVNV FUNDING, LLC FOR LEAVE TO AMEND PROOF OF CLAIM NOS. 12-15 *NUNC PRO TUNC***

[Docket Nos. 37, 38, 39, 40, & 46]

JEFF BOHM, Bankruptcy Judge.

## I. INTRODUCTION

In October of 2008, this Court issued a memorandum opinion in *In re Gilbreath* in which this Court took to task two unsecured creditors—LVNV Funding, LLC (LVNV) and eCast Settlement Corporation (eCast)—who filed woefully deficient proofs of claim with utter disregard for the requirements clearly set forth in Bankruptcy Rule 3001 requiring creditors to attach documentation in support of their claims.[1] Following its ruling in *Gilbreath*, in order to prevent future violations of Bankruptcy Rule 3001 and to foster judicial efficiency and economy, on December 11, 2008, this Court issued a written notice and order in all of its Chapter 13 cases requiring creditors to seek leave of court or written consent of the debtor before amending a deficient proof of claim after the debtor has lodged a claim objection (the Notice and Order). *See* Notice and Order that Federal Rule 15, as Made Ap-plicable by Bankruptcy Rule 7015, Shall Apply Whenever an Objection to a Proof of Claim Is Lodged, *available at* http://www.txs.uscourts.gov/bankruptcy/judges/jb/notice.htm.

Despite this Court's rulings in *Gilbreath*, the requirement that creditors seek leave of court to amend proofs of claim to which objections have been lodged, and this Court's continuing efforts to have creditors to comply with Bankruptcy Rule 3001,[2] LVNV, through its same counsel of record, Mark Stromberg (Stromberg), filed four proofs of claim in the present case on March 31, 2009 with no documents attached to them. Stromberg apparently finally got around to reading this Court's ruling in *Gilbreath* sometime thereafter because LVNV amended all of its deficient proofs of claim in this case on May 5, 2009—twelve days after the bar date and twenty-eight days after the Debtor objected to LVNV's original proofs of claim. Following this action, Stromberg also apparently decided to check this Court's website for the first time since November of 2008. Much to his chagrin, no doubt, he discovered this Court's Notice and Order, because on May 8, 2009 he filed a motion for leave to amend *nunc pro tunc* LVNV's proofs of claim in this case.

Stromberg's failure to keep apprised of this Court's prior rulings—including those rendered against his own client in *Gilbreath*—and his abject disregard for this Court's Notice and Order, which was is-

---

1. This Court issued a published memorandum opinion with respect to eCast which is available at 395 B.R. 356 (Bankr.S.D.Tex.2008). With respect to LVNV—the very same creditor who is the subject of this Memorandum Opinion—this Court issued written findings of fact and conclusions of law reiterating, almost verbatim, applicable portions of the published memorandum relating to eCast. [Case No.

08-32404, Docket No. 137.] Those findings of fact and conclusions of law are attached to this Memorandum Opinion as Exhibit A.

2. Since rendering its opinion in *Gilbreath*, this Court has issued another opinion, *In re North Bay General Hospital, Inc.*, 404 B.R. 443 (Bankr.S.D.Tex.2009), which outlines the filing requirements for a proof of claim.

sued, in part, due to his client's prior violation of Bankruptcy Rule 3001, will, as in *Gilbreath*, preclude LVNV from pursuing its claims in the present case. For the reasons set forth below, LVNV's motion for leave to amend is denied and the Debtor's objections to LVNV's proofs of claim are sustained.

## II. FINDINGS OF FACT

1. On November 25, 2008, Donald G. DePugh (the Debtor) filed a voluntary Chapter 13 petition, initiating the above-referenced Chapter 13 case. [Docket No. 1.]

2. The last day for a non-government creditor to file a proof of claim in this Chapter 13 case was April 23, 2009. *See* [Docket No. 16.]

**LVNV's Original Proofs of Claim**

3. On March 31, 2009, LVNV filed four proofs of claim—comprising claim numbers 12, 13, 14, and 15—in the Debtor's Chapter 13 case (Proofs of Claim 12, 13, 14, and 15, respectively).

4. Proof of Claim 12 consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $19,060.36, lists the basis for the claim as "MASTERCARD," and provides the last four digits of an account number—7880—by which the Debtor may be identified.[3] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes

interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges." No such itemized statement is attached to Proof of Claim 12. Rather, LVNV attached a single document to Proof of Claim 12 prepared by Resurgent Capital Services— LVNV's servicing company[4]—which contains the same information provided on the form with respect to the claim, but which also represents that LVNV purchased the debt from "Citibank."

5. Proof of Claim 13 also consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $13,278.68, lists the basis for the claim as "MASTERCARD," and provides the last four digits of an account number—4344—by which the Debtor may be identified.[5] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges." No such itemized statement is attached to Proof of Claim 13. Rather, LVNV attached a single document to Proof of Claim 13 prepared by Resurgent Capital Services, which contains the same information provided on the form with respect to the claim, but which also represents that

---

3. This account number ending in 7880 corresponds to an account listed on the Debtor's Schedule F held by "CBUSA/Sears," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this CBUSA/Sears account is listed on the Debtor's Schedule F as $18,467.91. [Docket No. 1.]

4. The document attached to Proof of Claim 12—and all of LVNV's other proofs of claim discussed below—states that "Resurgent Capital Services services this account on behalf of

the current creditor." Additionally, all of LVNV's original proofs of claim are signed by "Joyce Montjoy, Bankruptcy Recovery Manager of Resurgent Capital Services."

5. This account number ending in 4344 corresponds to an account listed on the Debtor's Schedule F held by "Citibank," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this Citibank account:is listed on the Debtor's Schedule F as $9,946.00. [Docket No. 1.]

LVNV purchased the debt from "Citibank."

6. Proof of Claim 14 also consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $20,756.99, lists the basis for the claim as "MASTERCARD," and provides the last four digits of an account number—0555—by which the Debtor may be identified.[6] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges." No such itemized statement is attached to Proof of Claim 14. Rather, LVNV attached a single document to Proof of Claim 14 prepared by Resurgent Capital Services, which contains the same information provided on the form with respect to the claim, but which also represents that LVNV purchased the debt from "Citibank."

7. Proof of Claim 15 also consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $2,807.49, lists the basis for the claim as "UNSECURED CHARGE OFF," and provides the last four digits of an account number—5703— by which the Debtor may be identified.[7] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges."

No such itemized statement is attached to Proof of Claim 15. Rather, LVNV attached a single document to Proof of Claim 15 prepared by Resurgent Capital Services, which contains the same information provided on the form with respect to the claim, but which also represents that LVNV purchased the debt from "Citibank" or "GOODYEAR."

8. On April 7, 2009, the Debtor filed objections to all four of LVNV's original proofs of claim (the Objections). [Docket Nos. 37–40.] The Debtor objects to Claims 12, 13, 14, and 15 on the following grounds: (1) LVNV failed to attach documentation to prove the existence of its purported claims; (2) LVNV failed to comply with Federal Rule of Bankruptcy Procedure 3001 (Bankruptcy Rule 3001); and (3) the Debtor denies that he has any liability to LVNV. In support of this third contention, the Debtor has attached an affidavit to the Objections, in which he swears that he does not owe any money to LVNV and that there is no proof of the debt, the transfer, or the proper amount owed. The Debtor requests that Claims 12, 13, 14, and 15 be disallowed.

9. On April 13, 2009, LVNV filed a Response to the Objections (the Response). [Docket No. 41.] In the Response, LVNV asserts that proofs of claim that fail to comply with Bankruptcy Rule 3001 are not automatically disallowed. LVNV also argues that the Debtor has not raised a "substantive" objection pursuant to 11 U.S.C. § 502(b) and that, as a result, the Objections should be overruled and

---

6. This account number ending in 0555 corresponds to an account listed on the Debtor's Schedule F held by "At & t Universal/Citibank," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this At & t Universal/Citibank account is listed on the Debtor's Schedule F as $19,549.90. [Docket No. 1.]

7. This account number ending in 5703 corresponds to an account listed on the Debtor's Schedule F held by "Goodyear/CBUSA NA/ HSB," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this Goodyear/CBUSA NA/ HSB account is listed on the Debtor's Schedule F as $2,029.00. [Docket No. 1.]

LVNV's claims should be allowed. In support of its position, LVNV cites the following cases in the Response: *In re Taylor,* 289 B.R. 379 (Bankr.N.D.Ind.2003) (for the proposition that claim objections must be couched in one of the nine statutory grounds enumerated in § 502(b)); *In re Cluff,* 313 B.R. 323 (Bankr.D.Utah 2004) (for the proposition that a claim objection based solely on a creditor's failure to comply with Bankruptcy Rule 3001 is invalid); *In re Burnett,* 306 B.R. 313 (9th Cir. B.A.P. 2004) (for the proposition that a claim should not be disallowed solely based on a creditor's failure to comply with Bankruptcy Rule 3001); *In re Kemmer,* 315 B.R. 706 (Bankr.E.D.Tenn.2004) (same); *Szatkowski v. Meade Tool & Die Co.,* 164 F.2d 228 (6th Cir.1947) (for the proposition that amendments to proofs of claim should be freely allowed); *In re G.L. Miller & Co.,* 45 F.2d 115 (2d Cir.1930) (same); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir.1997) (for the proposition that claims should not be dismissed without giving the claimant an opportunity to amend); and In re Armstrong, 320 B.R. 97 (Bankr.N.D.Tex.2005) (for the proposition that only substantive objections based on § 502(b) provide a basis for disallowance). Notably, LVNV does not cite this Court's published opinion in *Gilbreath* or the published opinion of the Honorable Gray H. Miller, United States District Judge for the Southern District of Texas, in *eCast Settlement Corp. v. Tran (In re Tran),* 369 B.R. 312 (S.D.Tex.2007), which affirmed a ruling by Bankruptcy Judge Karen K. Brown, and which is binding on this Court.[8]

### LVNV's Amended Proofs of Claim

10. On May 5, 2009—twelve days after the bar date and twenty-eight days after the Debtor filed the Objections—LVNV amended all four of its proofs of claim to include documentation in support of each claim. The amount of the claim listed on each amended proof of claim is the same as the amount sought in LVNV's original proofs of claim. However, on the proof of claim form for each amended proof of claim, LVNV did not check the box marked, "Check this box if claim includes interest or other charges in addition to the principal amount of claim." Additionally, LVNV attached documents in support of each amended proof of claim.

11. LVNV attached the following documents to its Amended Proof of Claim 12:

a. A "Bill of Sale, Assignment and Assumption Agreement" between Citibank USA, National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated March 28, 2007, which contains the following language:

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated March 28, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and

---

**8.** This Court agrees with the assessment of the Bankruptcy Court for the Northern District of Texas that decisions by the district court are binding on the bankruptcy courts of that district under the federal hierarchical judicial structure. *Rand Energy Co. v. Strata Directional Tech., Inc. (In re Rand Energy Co.),* 259 B.R. 274, 276 (Bankr.N.D.Tex.2001); *see also In re Windmill Farms, Inc.,* 70 B.R. 618, 621–22 (9th Cir. B.A.P. 1987), *rev'd on other* grounds, 841 F.2d 1467 (9th Cir.1988); *Johnson–Allen v. Lomas and Nettleton Co. (In re Johnson–Allen),* 67 B.R. 968, 972–73 (Bankr. E.D.Pa.1986); *In re Windsor Commc'ns Group, Inc.,* 67 B.R. 692, 698–99 (Bankr. E.D.Pa.1986); *In re Moisson,* 51 B.R. 227, 229 (Bankr.E.D.Mich.1985); and *see generally* Daniel J. Bussel, Power, Authority, and Precedent in Interpreting the Bankruptcy Code, 41 UCLA L.Rev. L063 (1994).

assigns, the Accounts described in Section 1.2 of the Agreement.

b. A "Sale and Assignment" dated March 31, 2007, which sets forth the following:

Sherman Originator LLC ("Originator") . . . hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 3/31/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c. A number of invoices from 2006 showing various purchases made by the Debtor charged to his Sears credit card with an account number ending in 7880. None of these invoices indicates an outstanding account balance of $19,060.36—the amount of LVNV's claim listed in Proof of Claim 12.

12. LVNV attached the following documents to its Amended Proof of Claim 13:

a. A "Bill of Sale, Assignment and Assumption Agreement" between Citibank (South Dakota), National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Bayer") dated June 26, 2007, which contains the following language:

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 26, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

b. A "Sale and Assignment" dated June 30, 2007, which sets forth the following:

Sherman Originator LLC ("Originator") . . . hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 6/30/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c. A number of invoices from 2006 showing various charges to the Debtor's "Citi Dividend Platinum Select" credit card with an account number ending in 4344. None of these invoices indicates an outstanding account balance of $13,278.68—the amount of LVNV's claim listed in Proof of Claim 13.

13. LVNV attached the following documents to its Amended Proof of Claim 14:

a. A "Bill of Sale, Assignment and Assumption Agreement" between Citibank (South Dakota), National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated June 26, 2007, which contains the following language:

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 26, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

b. A "Sale and Assignment" dated June 30, 2007, which sets forth the following:

Sherman Originator LLC ("Originator") ... hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 6/30/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c. A number of invoices from 2005 and 2006 showing various charges to the Debtor's "AT & T Universal Platinum" credit card with an account number ending in 0555. None of these invoices indicates an outstanding account balance of $20,756.99—the amount of LVNV's claim listed in Proof of Claim 14.

14. LVNV attached the following documents to its Amended Proof of Claim 15:

a. A "Bill of Sale, Assignment and Assumption Agreement" between Citibank (South Dakota), National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated June 26, 2007, which contains the following language:

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 26, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

b. A "Sale and Assignment" dated June 30, 2007, which sets forth the following:

Sherman Originator LLC ("Originator") ... hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 6/30/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c. A number of invoices from 2005 and 2006 showing various charges to the Debtor's Goodyear credit card with an account number ending in 5703. None of these invoices indicates an outstanding account balance of $2,807.49—the amount of LVNV's claim listed in Proof of Claim 15.

15. On May 8, 2009, LVNV filed a Motion of LVNV Funding, LLC for Leave to Amend Proof of Claim Nos. 12–15 *Nunc Pro Tunc* and Brief in Support Thereof (the Motion for Leave). [Docket No. 46.]

**The Claim Objection Hearing**

16. On May 21, 2009, this Court held a hearing on the Debtor's Objections and LVNV's Motion for Leave. Stromberg, counsel of record for LVNV, testified on behalf of LVNV. No other representative of LVNV appeared, including Joyce Montjoy, the "Bankruptcy Recovery Manager" of Resurgent Capital Services—LVNV's servicing company—who prepared and signed Proofs of Claim 12 through 15 on behalf of LVNV. Stromberg introduced into evidence without objection LVNV's Amended Proofs of Claim 12 through 13 and the documents attached thereto. Additionally, Stromberg stated that he did not become aware of this

Court's Notice and Order until after he filed the amended proofs of claim, but that he was fully aware of this Court's opinion in *Gilbreath*. Stromberg also conceded that he only attempted to obtain the documents attached to LVNV's amended proofs of claim after the Debtor lodged the Objections. When attempting to show that the credit card accounts comprising LVNV's claims were among the "Accounts" and "Receivable Assets" described in the documents attached to LVNV's amended proofs of claim, Stromberg conceded that he forgot to include any such evidence in his exhibit booklet. At the conclusion of the hearing, this Court issued oral findings of fact and conclusions of law and ordered that the Motion for Leave was denied and, additionally, ordered LVNV to pay $750.00 to compensate the Debtor's counsel for the attorney's fees that he incurred in filing the Objections and appearing at the hearing, for which Stromberg was unprepared.

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction and Venue

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This claim objection proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Additionally, this proceeding is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06–3556, 2006 WL 3805670, at *19 (Bankr.S.D.Tex. Dec.22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does

not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

#### B. Standard for Ruling on Claim Objections

Allowance of claims is governed by 11 U.S.C. § 502. Section 502(a) provides that a proof of claim filed under § 501 is deemed allowed unless a party-in-interest objects. Section 502(b) provides that once a claim objection is lodged, the Court, after notice and a hearing, shall determine the amount of the claim as of the petition date and "shall allow such claim in such amount" unless the claim falls under one of the nine statutory grounds for disallowance listed in § 502(b)(1)-(9).

The statutory grounds for disallowance most applicable to the dispute at bar are § 502(b)(1) and (9). Under § 502(b)(1), a claim must be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because: such claim is contingent or unmatured." Additionally, under § 502(b)(9), a claim must be disallowed if "proof of such claim is not timely filed" with narrow exceptions carved out for tardy claims filed pursuant to 11 U.S.C. § 726(a)(1)-(3), or in accordance with the Bankruptcy Rules.

The form and content requirements for proofs of claim are set forth in Federal Rule of Bankruptcy Procedure 3001 (Bankruptcy Rule 3001). Bankruptcy Rule 3001(a) mandates that "[a] proof of claim shall conform substantially to the appropriate Official Form"—that is, Official Form 10 (Form 10). Additionally, Bankruptcy Rule 9009 states that the Official Forms "shall be observed." Fed. R. Bankr.P. 9009. Paragraph 7 of Form 10 requires the claimant to "[a]ttach redacted

copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements" or a summary of such documents. Paragraph 7 of Form 10 also requires that "[i]f the documents are not available, please explain." Bankruptcy Rule 3001(c) requires that, when a claim is based on a writing, "the original or a duplicate [of the written document] shall be filed with the proof of claim"; or, if the writing has been lost or destroyed, "a statement of the circumstances of the loss or destruction shall be filed with the claim."

■ A proof of claim that comports with the requirements set forth in Bankruptcy Rule 3001, "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr.P. 3001(f). Three Bankruptcy Judges for the Northern District of Texas issued a joint opinion in *In re Armstrong* explaining the sort of documentation that a claimant must produce in order to avail its claims of prima facie validity pursuant to Bankruptcy Rule 3001(f). 320 B.R. 97 (Bankr.N.D.Tex. 2005). A credit card or consumer account creditor, like LVNV in this case, must provide "an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined."

*Id.* at 106; *see also In re Relford,* 323 B.R. 669, 674 (Bankr.S.D.Ind.2004) ("[A] credit card or consumer credit claim is based on both the credit card agreement and proof of the credit card's actual use. Accordingly, a claim for such debt must include the parties' credit agreement (an any amendments thereto), as well as evidence regarding the debtor's use of the credit card or consumer account."). Additionally, a claimant whose claims have been assigned—also like LVNV in this case—must "document its ownership of the claim" and produce "a signed copy of the assignment and sufficient information to identify the original credit card account." *Id.* (quoting *In re Hughes,* 313 B.R. 205, 212 (Bankr. E.D.Mich.2004)).

■ In *Gilbreath,* this Court described the burden-shifting process that § 502 and Bankruptcy Rule 3001 create during a proof of claim dispute. *In re Gilbreath,* 395 B.R. at 361–65. If, for example, an unsecured creditor files a proof of claim that fully complies with Bankruptcy Rule 3001, that claim is deemed prima facie valid and, if the debtor objects to that claim, he or she must produce evidence sufficient to rebut the presumption of validity and establish that the claim should be disallowed pursuant to § 502(b). If, however, an unsecured creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome when lodging a claim objection pursuant to § 502(b),[9] at which point the burden shifts

---

**9.** Some courts have suggested that even if a creditor's proof of claim fails to comply with Bankruptcy Rule 3001, the debtor's objection must still produce "some evidence which tends to 'meet, overcome, or at least equalize' the statements on the proof of claim." *In re Habiballa,* 337 B.R. 911, 915 (Bankr.E.D.Wis. 2006) (quoting *In re Cluff,* 313 B.R. 323, 338 (Bankr.D.Utah 2004)). These courts essentially reason that because a proof of claim is

signed under penalty of up to $500,000.00 or five years in prison, even a skeletal proof of claim should be afforded some sort of evidentiary weight. *Id.*

Despite these opinions, this Court is bound to follow the District Court's decision in *Tran, see supra* note 8, which holds that a debtor "has no evidentiary burden to overcome" in objecting to a claim that is not prima facie

back to the claimant to prove the underlying validity of its claim by a preponderance of the evidence in order to have its claim allowed. *See* 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260–61 (5th Cir. 1998); *In re Fid. Holding Co.*, 837 F.2d 696, 698 (5th Cir.1988). This Court rendered its decision in *Gilbreath*—at least in part—to help curb the growing trend of creditors filing seriously deficient proofs of claim in the name of frugality, only amending those claims to include the proper documentation after the debtor lodges an objection and the Court sets the matter for a hearing.

■ This Court believes that the Supreme Court created Bankruptcy Rule 3001 for a reason [10]—so that debtors and other parties in interest can see and read the documents upon which claims are based in order to make an *initial* assessment of their validity. This Court does not believe that the Supreme Court contemplated that creditors could ignore Bankruptcy Rule 3001's requirements unless and until a debtor complains and then cry "no harm, no foul" by producing documents that should have been produced initially. This latter scenario subverts the fundamental process by which the American legal system is based—that a claimant must come forward with at least some evidence that its claims are valid before collecting on their claims. *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21, 120

S.Ct. 1951, 147 L.Ed.2d 13 (2000) (recognizing that "the burden of proof is an essential element of the claim itself," and that "one who asserts a claim [has] the burden of proof that normally comes with it"). Though efficiency and the speedy resolution of the claims objection process is important to keep bankruptcy cases running smoothly, such efficiency should not come at the expense of accuracy, fairness, and fundamental evidentiary requirements. Every penny that goes to pay a creditor's allowed claim necessarily diminishes the pool of funds available to pay other creditors while, at the same time, reducing the probability that the Chapter 13 debtor will be able to propose, and make payments on, a feasible plan of reorganization. Creditors are provided ample leeway to have their claims presumed valid—and to shift the evidentiary burden to the debtor—if they simply comply with Bankruptcy Rule 3001 the *first* time they file a proof of claim.

In order to ensure compliance with Bankruptcy Rule 3001 and to give effect to the burden-shifting framework described above, this Court—in accordance with Bankruptcy Rule 9014 and this Court's equitable power under 11 U.S.C. § 105(a)—issued a Notice and Order that Bankruptcy Rule 7015 shall apply in all Chapter 13 cases in this Court after a claim objection is filed.[11] Bankruptcy Rule

---

valid. *In re Tran*, 369 B.R. at 318. Additionally, even if this Court were to adopt the reasoning from the bankruptcy courts mentioned above, because the Debtor attached a sworn affidavit to the Objection, he has taken sufficient action to "meet, overcome, or at least equalize" the statements made in LVNV's original proofs of claim. *In re Habiballa*, 337 B.R. at 915.

10. The Federal Rules of Bankruptcy Procedure are promulgated by the Supreme Court of the United States.

11. Bankruptcy Rule 9014 allows a bankruptcy court to apply any of the Bankruptcy Rules in Part VII to a contested matter "at any stage in a particular matter." Fed. R. Bankr.P. 9014. Section 105(a) of the Bankruptcy Code, which allows a bankruptcy court to issue any order "necessary or appropriate to carry out the provisions of" the Bankruptcy Code, has also been frequently applied to allow or disallow amendments to proofs of claim as a matter of equity. *See, e.g., United States v. Johnston*, 267 B.R. 717, 721 (N.D.Tex.2001) (concluding that "the [bankruptcy] court's power to pre-

7015 incorporates Federal Rule of Civil Procedure 15, which requires claimants to obtain "the opposing party's written consent or the court's leave" to amend a claim after being served with a response—in this case, a written objection to a proof of claim. Fed.R.Civ.P. 15(a)(2). As this Court pointed out in *Gilbreath,* "most bankruptcy courts have recognized that '[t]he trend of the cases appear to apply Rule 7015 to contested matters'" (here, the Debtor's Objections initiated a contested matter). *In re Gilbreath,* 395 B.R. at 366 (quoting *In re MK Lombard Group I, Ltd.,* 301 B.R. 812, 816 (Bankr.E.D.Pa. 2003) and citing *In re Stavriotis,* 977 F.2d 1202, 1204 (7th Cir.1992) (noting that Bankruptcy Rule 9014 permits extension of Rule 7015 to contested matters); *In re Best Refrigerated Express, Inc.,* 192 B.R. 503, 506 (Bankr.D.Neb.1996) (applying Rule 7015 through Rule 9014 to allow amendment to a filed proof of claim to relate back); *Enjet, Inc. v. Mar. Challenge Corp. (In re Enjet, Inc.),* 220 B.R. 312, 314 (E.D.La.1998) (noting that "numerous courts have applied Rule 7015 and Rule 15(c) explicitly or by analogy in non-adversary [bankruptcy] proceedings"); *In re Brown,* 159 B.R. 710, 714 (Bankr.D.N.J. 1993) (noting that Rule 15's "standards for allowing amendments to pleadings in adversary proceedings ... also apply to amendments to a proof of claim"); *In re Blue Diamond Coal Co.,* 147 B.R. 720, 725 (Bankr.E.D.Tenn.1992) (extending Rule 9014 to apply Rule 7015 to contested matters); *In re Enron Corp.,* 298 B.R. 513, 521–22 (Bankr.S.D.N.Y.2003) (invoking Rule 9014 to apply Rule 7015); 10 Collier

on Bankruptcy ¶ 7015.02 n. 1 (Matthew Bender 15th ed. Rev.)).

Having described the applicable legal standard for ruling on claim objections and amendments to contested proofs of claim, the Court will now apply these standards to the dispute at bar.

■ Based on the standard articulated above, LVNV's original proofs of claim fall far short of compliance with Bankruptcy Rule 3001. LVNV's four original proofs of claim are nothing more than bare allegations that the Debtor owes LVNV money based on some "MASTERCARD" or "UNSECURED CHARGE OFF" with respect to certain accounts purchased from "Citibank" or "GOODYEAR." [Findings of Fact No. 4–7.] It was incumbent on LVNV to produce documentation supporting its claim and—because it is not the original account holder—to document ownership of its claims. *See In re Armstrong,* 320 B.R. at 106. The allegations in LVNV's original proofs of claim do not come within hailing distance of accomplishing either. LVNV's original proofs of claim are therefore not entitled to prima facie validity and, unless this Court grants the Motion for Leave and the documents attached to LVNV's amended proofs of claim are sufficient to clothe LVNV's claims with a presumption of validity, the Debtor's Objection is sufficient to shift the burden back to LVNV to prove the validity of its claims by a preponderance of the evidence.

Thus, before this Court addresses the validity of LVNV's claims, it must first

vent abuse of process includes bending the time requirements ... to permit amendments" (internal marks omitted)); *In re Eden,* 141 B.R. 121, 123–24 (Bankr.W.D.Tex.1992) (recognizing that "many bankruptcy courts—for equitable reasons—do permit amendments to proofs of claim, even past the bar date").

The Seventh Circuit has also explained that "[Bankruptcy] Rule 7015 is not ... the only possible authority for amendment. Another possible basis is the bankruptcy court's broad equitable jurisdiction." *In re Unroe,* 937 F.2d 346, 349 (7th Cir.1991).

address the threshold question of whether the Motion for Leave should be granted.

### C. LVNV's Motion to Amend

 Because LVNV—twelve days after the bar date—has attempted to amend its proofs of claim after the Debtor lodged the Objection, [Finding of Fact No. 10], LVNV was required, pursuant to the Notice and Order, to obtain this Court's leave or the Debtor's written consent before amending its proofs of claim. Fed. R.Civ.P. 15(a)(2). Rule 15(a)(2)—as applicable to this contested matter through Bankruptcy Rule 7015 and the Notice and Order—provides that the Court should freely give leave to amend where justice so requires. Fed.R.Civ.P. 15(b)(1); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 390 (5th Cir.2009). In order to determine whether "justice so requires," a court may consider a variety of factors, such as (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, and (5) futility of the amendment. *Foman*, 371 U.S. at 182, 83 S.Ct. 227; *Torch Liquidating Trust*, 561 F.3d at 391. The Fifth Circuit has held that decisions concerning motions to amend are entrusted to the sound discretion of the trial court. *See Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir.1998).

 This Court may deny LVNV's request for leave to amend if it finds that any *one* of these factors is. present. *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir.1998) (considering only the "futility" factor when a different factor was considered by the district court). The Court will address each equitable factor in turn.

### 1. Undue Delay

 The controlling question for this factor is whether the delay in filing the amendment amounts to *undue* delay. Black's Law Dictionary Defines "undue" as "excessive or unwarranted." Black's Law Dictionary 1529 (7th ed.1999). Thus, delay amounts to "undue delay" where a party has waited an unreasonably long period of time to amend, or where the delay in filing the amendment is unwarranted. *See, e.g., Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1164 (5th Cir.1982) (affirming district court's determination that request for leave to amend should be denied when the; party seeking to amend had access to the information beforehand and the information had not "only recently come to light"). The Fifth Circuit has held that "in exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 316 (5th Cir.1996) (quoting *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir.1981)).

Following its decision in *Southmark*, the Fifth Circuit has addressed the issue of undue delay in three opinions with facts comparable to the case at bar. In *Parish v. Frazier*, the Fifth Circuit affirmed the district court's conclusion that the plaintiff's delay in filing an amended complaint constituted "undue delay" where the delay "could have been avoided by due diligence, as plaintiff could have raised the additional claims in her [original] complaint or at least sought to amend at an earlier time." 195 F.3d 761, 763 (5th Cir.1999). The Fifth Circuit determined that, under such circumstances, the party seeking to amend

"bears the burden of showing that delay was due to oversight;, inadvertence or excusable neglect." *Id.* Because the plaintiff in *Parish* made no such showing, the district court's refusal to grant leave to amend was upheld. The Fifth Circuit came to a similar conclusion in *Smith v. EMC Corp.*, where it upheld the district court's refusal to grant a plaintiff leave to amend where the plaintiff could have included the claim added to the amended complaint in the original complaint, but chose not to do so as part of "his own litigation strategy." 393 F.3d 590, 596 (5th Cir.2004). Because the plaintiff could have included the amended claim, his delay in filing his amended complaint constituted undue delay. *Id.* at 595–96. Finally, in *Jones v. Robinson Property Group, L.P.*, the Fifth Circuit affirmed the district court's denial of the plaintiff's motion for leave to amend where the evidence giving rise to the newly asserted claim was available "long before" he amended his complaint to include that claim. 427 F.3d 987, 995 (5th Cir.2005). The court in *Jones* also reiterated its prior determination that the party seeking leave to amend "bears the burden of showing that [the] delay was due to oversight, inadvertence, or excusable neglect," *Id.* at 994–95.

■ Because LVNV attempted to amend its proofs of claim twelve days after the bar date, [Finding of Fact No. 10], there is no question that it bears the burden of providing some tenable excuse for failing to timely amend. Here, LVNV filed its Motion for Leave nearly a month after the Debtor objected to its proofs of claim and only after it had already filed its amendments. [Findings of Fact No. 5 & 6.] LVNV cannot reasonably argue that these documents were unavailable until after the bar date because the very same documents were attached to LVNV's Response, which was filed *ten days before* the bar date. [Findings of Fact No. 2 & 9.] It is also noteworthy that LVNV was able to obtain supporting documents and attach them to its Response a mere *five days after* the Debtor filed his Objections. [Findings of Fact No. 8 & 9.] It appears that these documents—all of which should have been attached to LVNV's original proofs of claim—were only a phone call away. Why that phone call was not made at the time LVNV filed its original proofs of claim, or even some reasonable time thereafter, this Court will not venture to guess. It is enough to conclude that LVNV had access to—or could have easily acquired—the documents attached to its amended proofs of claim long before it filed its untimely amendments to its proofs of claim on May 5, 2009, but, for some undisclosed reason, failed to do so. Indeed, LVNV called no witnesses at the May 21, 2009 hearing to explain the delay in obtaining the documents that it eventually attached to its amended proof of claim. Additionally, LVNV's counsel of record, Stromberg, offered no explanation for why these documents were not initially attached.

As discussed above, the Fifth Circuit has upheld a trial court's denial of a motion for leave to amend where counsel's failure to include additional claims—or, in this case, documents—originally was due, in part, to "his own litigation strategy." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004). As LVNV's counsel of record, Stromberg's "litigation strategy" apparently involves disregarding applicable precedent and rulings against his clients in prior cases. This Court has already discussed Stromberg's failure to comply with Bankruptcy Rule 3001 despite this Court's ruling against LVNV in *Gilbreath* and despite this Court's Notice and Order. However, Stromberg's failures go much further back and beyond this District.

In August of 2006, following the joint opinion of three Bankruptcy Judges for the Northern District of Texas in *In re*

*Armstrong*, 320 B.R. 97 (2005), Bankruptcy Judge Harlin Hale, one of the co-authors of the joint opinion, issued a second published opinion specifically applicable to eCast—for whom Stromberg was counsel of record. *In re Armstrong*, 347 B.R. 581 (Bankr.N.D.Tex.2006). In that opinion, Judge Hale disallowed one of eCast's claims because eCast had failed to provide supporting documentation sufficient to establish prima facie validity or to overcome the debtor's claim objection.[12] *Id.* at 585. Judge Hale's comments with respect to Stromberg are particularly noteworthy:

> There was no evidence of an "evidentiary link" between Lowe's and GE Capital Finance offered by eCast, other than

**12.** Judge Hale adopted the reasoning of Bankruptcy Judge Barbara Houser—another co-author of the joint *Armstrong* opinion—in *In re Rochester*, No. 03–32184–BJH–13, 2005 WL 3670877 (Bankr.N.D.Tex. May 24, 2005), which set forth three scenarios under which assignee claimants may (or may not) clothe their claims with prima facie validity. Under the first scenario, the assignee claimant produces documentation of a "blanket assignment" of accounts to the assignee claimant from a creditor listed on the debtor's schedules along with copies of the underlying account documents. Under the second scenario, the assignee claimant produces documentation of a blanket assignment of accounts to the assignee creditor from some other creditor not listed on the debtor's schedules, but also produces additional documents sufficient to link the assignee claimant with an entity listed on the debtor's schedules. Under the third scenario, the assignee claimant produces documentation of a blanket assignment of accounts to the assignee creditor from another creditor not listed on the debtor's schedules, but does not produce sufficient documentation to link the assignee creditor with a creditor listed on the debtor's schedules. Under scenarios one and two, the assignee creditor has produced sufficient documentation to give rise to a presumption that the assignee claimant is the present owner and holder of the debtor's accounts. Under the third scenario, the assignee creditor has not. *See In re Rochester*, 2005 WL 3670877, at *5–8.

Mr. Stromberg's say so at the hearing, which is argument and not evidence. This would not normally end the inquiry, because lack of prima facie validity in the face of a valid objection by the Debtor simply shifts the burden to eCast to prove its right to payment from the Debtor. However, since eCast offered no further evidence at the hearing, the Court finds that eCast has not met its burden of proof; and the Debtor's objection to claim number twelve will therefore be sustained.

*Id.* (internal citations omitted).

Even though Stromberg's "say so" was insufficient to support his client's eviden-

In Judge Hale's *Armstrong* case, one of the claims of eCast, for whom Stromberg was counsel of record, did not enjoy prima facie validity because it fell under scenario three. eCast's proof of claim contained an account number and a statement that the claim was assigned to eCast by General Electric/Lowes. In support of this claim, eCast submitted a Lowes credit card account summary for that particular account and a blanket assignment document showing that a bundle of accounts were transferred from GE Capital Finance, Inc. to eCast. Additionally, the debtor in that case had scheduled a debt due on a Lowe's credit card with the same account number. Applying Judge Houser's framework, Judge Hale concluded that eCast did not produce sufficient evidence to establish prima facie ownership of its claims. *In re Armstrong*, 347 B.R. at 585.

In the case at bar, there is no question that LVNV's original proofs of claim are insufficient to clothe its claims in prima facie validity because no supporting documents were attached to them. However, it is noteworthy that LVNV attached nearly identical documents to its amended proofs of claim to those submitted by eCast in Judge Hale's *Armstrong* case, which Judge Hale determined to be *insufficient* to give rise to prima facie validity. Thus, even if this Court were to grant LVNV's Motion for Leave, LVNV's claims would still not enjoy prima facie validity. Even more noteworthy is that Stromberg, as counsel for eCast, witnessed this result.

tiary burden in *Armstrong,* he nonetheless offered it to this Court at the May 21, 2009 hearing to support his contention that LVNV is the current owner and holder of the Debtor's accounts. Indeed, Stromberg's "say so" was also all that he offered in support of his client's position that valid and enforceable agreements exist between the original claim holders and the Debtor, and that the rights of those original claim holders have been assigned to his client. Notwithstanding rulings issued against his clients in both *Armstrong* and *Gilbreath,* Stromberg continues to believe that his word will be taken as gospel truth and that oral argument is as good as evidence. Unfortunately for Stromberg, he is as mistaken in this belief today as he was three years ago in *Armstrong* and last year in *Gilbreath.*

It is equally noteworthy that in the case at bar Stromberg had two opportunities to explain why LVNV could not obtain the documentation required to be attached to its proofs of claim, but he failed to avail himself of either. First, Form 10 specifically provides that if the documentation supporting the claim is unavailable, "please explain." Despite these instructions, Stromberg provided no explanation for why LVNV did not attach the requisite documentation to LVNV's original proofs of claim. Second, at the May 21, 2009 hearing, this Court gave Stromberg an opportunity to explain why the documents attached to LVNV's untimely amended proofs of claim were initially unavailable, but Stromberg failed to provide any proper explanation—such as adducing testimony from Joyce Montjoy, the Bankruptcy Recovery Manager for Resurgent Capital Services, who prepared and signed all of LVNV's proofs of claim. *See supra* note 4.

Therefore, because LVNV—through Stromberg, its counsel of record—failed to adduce testimony at the May 21, 2009 hearing to explain the reason for the delay in filing its amended proofs of claim, and because the information provided in its amended proofs of claim was available when the original proofs of claim were filed, or, at the very least, ten days before the bar date (when LVNV filed its Response along with supporting documentation), this Court will not grant the Motion for Leave. *See Southmark Corp.,* 88 F.3d at 316; *see also Pam Capital Funding LP v. National Gypsum Co. (In re Kevco Inc.),* 113 Fed.Appx. 29, 31 (5th Cir.2004) ("The district court does not abuse its discretion by denying a motion to amend where the plaintiff unduly delays in seeking an amendment and offers no explanation for the delay.") The "undue delay" factor weighs strongly against permitting LVNV to amend its original proofs of claim.

### 2. Bad Faith or Dilatory Motive

 The Fifth Circuit recently defined "bad faith" as "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive and implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Burnsed Oil Co. v. Grynberg,* 320 Fed. Appx. 222, 230 (5th Cir.2009) (quoting Mississippi law and Black's Law Dictionary). Additionally, the Supreme: Court of Texas has defined "bad faith" as a "wilful disregard of and refusal to learn the facts when available and at hand." *Citizens Bridge Co. v. Guerra,* 152 Tex. 361, 258 S.W.2d 64, 69–70 (1953). Thus, this Court should refuse to allow the untimely amendments to LVNV's proofs of claim if LVNV's initial failure to comply with Bankruptcy Rule 3001 by attaching required documents was not prompted by an honest mistake, but was instead due to a willful disregard of available facts or applicable law.

 LVNV cannot claim that its initial failure to comply with Bankruptcy Rule 3001 was an honest mistake. LVNV—through Stromberg, its counsel of record—certainly knows that a credit card claimant is required to attach supporting documents to its proof of claim and that this Court requires claimants to obtain leave of Court or consent of the Debtor before amending contested proofs of claim. Stromberg participated at the claim objection hearing in *Gilbreath* and witnessed first hand the potential consequences of failing to comply with Bankruptcy Rule 3001. Indeed, this Court issued written findings of fact and conclusions; of law disallowing LVNV's claims in *Gilbreath*. *See* Exhibit A. Further, Stromberg was counsel of record for one of the claimants in the *Armstrong* case, where three Bankruptcy Judges for the Northern District of Texas issued a joint opinion spelling out the specific requirements of Bankruptcy Rule 3001. *See In re Armstrong*, 320 B.R. 97, 103–07 (Bankr.N.D.Tex.2005) (listing the various types of documents that claimants can attach to their proof of claim to comply with Bankruptcy Rule 3001).

Stromberg's attempt to plead ignorance of this Court's Notice and Order and applicable law falls on this Court's deaf ears. The applicable law of which Stromberg claims not to have been aware until after filing LVNV's original proofs of claim was, in fact, issued with respect to Stromberg's client as early as 2005, in *Armstrong,* and as recently as November of 2008, when this Court ruled against LVNV in the *Gilbreath* case. Further, Stromberg's failure to provide evidence of his client's ownership of its claims is conspicuously noted in Judge Hale's follow-up opinion to *Armstrong* relating to eCast's proofs of claim. *In re Armstrong*, 347 B.R. at 585.

Stromberg has offered no explanation for LVNV's initial failure to comply—or to make even a minimal attempt to comply—with Bankruptcy Rule 3001; nor could he, given his extensive involvement in cases where both LVNV and his other clients had claims disallowed for failing to produce; sufficient documentation and evidence in support of their claims. Indeed, Stromberg stated at the May 21, 2009 hearing that "we get the documents as quickly as we can *when we're aware of an objection.*" Thus, by Stromberg's own admission, LVNV made no attempt to comply with Bankruptcy Rule 3001 when filing its original proofs of claim and only deigned to comply with Bankruptcy Rule 3001 after being called out for having violated it. Stromberg's self-professed ignorance of applicable law and this Court's Notice and Order can only be described as "willful ignorance," which constitutes bad faith. *Citizens Bridge Co.,* 258 S.W.2d at 69–70.

LVNV's utter disregard for Bankruptcy Rule 3001's requirements when filing its original proofs of claim amounts to bad faith. This Court will not now permit LVNV to amend its deficient claims alter the bar date with documents that it either had, or could have easily obtained, in a timely manner. Thus, the "bad faith or dilatory motive" factor also weighs strongly against permitting LVNV to amend its original proofs of claim.

### 3. Repeated Failure to Cure Deficiencies

 Generally, this factor considers whether a claimant has been given ample opportunity to amend its complaint to cure deficiencies, but has repeatedly failed to cure such deficiencies. *Torch Liquidating Trust,* 561 F.3d at 391; *St. Germain v. Howard,* 556 F.3d 261, 264 (5th Cir.2009) (upholding a district court's denial of a motion for leave after several opportunities to state a case); *Herrmann Holdings*

*Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 566 (5th Cir.2002) (affirming a denial of a motion for leave after an initial complaint and two amendments); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607–08 (5th Cir.1998) (affirming denial of a motion for leave after the party had three chances to state a claim). Although courts have typically considered "repeated failure to cure deficiencies" with respect to multiple amendments filed by a party in the context of a particular case, this Court believes that a party's repeated failure to heed a court's prior rulings against it in other proceedings may properly be considered when determining whether to grant that party leave to amend after the deadline has expired. However, even if the "repeated failure" inquiry is limited to the particular proceeding at bar, LVNV's amended proofs of claim still fail to comply with Bankruptcy Rule 3001, *see infra* Part III.C.5, and are insufficient to carry LVNV's burden to prove the underlying validity of its claims by a preponderance of the evidence. *See infra* Part III.D.

As stated below, even if this Court granted LVNV leave to amend its deficient proofs of claim, its amended proofs of claim still fail to comply with Bankruptcy Rule 3001. *See infra* Part III.C.5. Thus, LVNV's amendments fail to cure the deficiencies in its original proofs of claim.

This Court also believes that the repeated failure of LVNV—and its counsel of record, Stromberg—to comply with Bankruptcy Rule 3001 in cases before this Court and the Bankruptcy Court for the Northern District of Texas militate against granting LVNV leave to amend its proofs of claim in the present case. As discussed above, LVNV's total failure to comply with Bankruptcy Rule 3001 in *Gilbreath* ultimately resulted in disallowance of its claims in that case. *See* Exhibit A. Additionally, the failure of Stromberg's client to attach documentation to establish that it was the current owner and holder of the debtor's accounts caused its claims to be disallowed in *Armstrong. In re Armstrong*, 347 B.R. at 585.

Because LVNV's amended proofs of claim do not comply with Bankruptcy Rule 3001 and are insufficient to carry LVNV's burden of proof at this stage of the proceeding, and because LVNV and its counsel of record, Stromberg, have repeatedly failed to comply with Bankruptcy Rule 3001 despite this Court's ruling against LVNV in *Gilbreath*, despite Judge Hale's ruling against Stromberg's client in *Armstrong*, and despite this Court's Notice and Order that is displayed in bold, capital letters on this Court's website, this Court will not grant LVNV leave to amend its deficient proofs of claim in this case. Thus, the "repeated failure to cure deficiencies" factor also weighs against granting LVNV leave to amend.

**4. Undue Prejudice**

■ Counsel for LVNV, Stromberg, argued at the May 21, 2009 hearing that LVNV's untimely filing of its amended proofs of claim does not prejudice the Debtor in any way. Specifically, Stromberg argued that "we're in the same spot that we would have been" if LVNV had attached supporting documentation to its original proofs of claim. This Court strongly disagrees. Not only have LVNV's actions prejudiced the Debtor by causing him to incur attorney's fees needlessly; they have wasted the time of both this Court and the Debtor—time which, at least for the Debtor, could have been better spent planning and drafting his Chapter 13 plan of reorganization and moving his bankruptcy case forward.

At the May 21, 2009 hearing, the Debtor argued that LVNV had access to the documentation attached to the amended proofs

of claim at the time of the original filing, or soon after, and assuredly before the deadline for filing a proof of claim. The Debtor further asserted that he has incurred substantial attorney's fees and costs in attempting to discover information that LVNV was required to produce along with its original proofs of claim.

 In a normal lawsuit, the court inquires whether all owing an amended complaint would cause undue prejudice by requiring the opposing party to respond to unexpected theories of recovery based on different facts than those originally pled. *See Chitimacha Tribe of La.*, 690 F.2d at 1164. In a bankruptcy case, the question of undue prejudice with respect to allowing untimely amendments to proofs of claim should also take into account whether the Debtor was forced to incur unnecessary expenses due to a creditor's initial failure to comply with Bankruptcy Rule 3001. Indeed, the very purpose of Bankruptcy Rule 3001 is to avoid such unnecessary expenses. *See In re Armstrong*, 320 B.R. at 104 ("The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense.").

While LVNV's amended proofs of claim do not allege some alternative and unexpected basis for recovery, LVNV's failure to initially include the documents that it attached to its amended proofs of claim has cost the Debtor $750.00 and has result-

ed in unnecessary hearings at which the Debtor was forced to incur additional fees and expenses for having his counsel appear. The Court concludes that forcing the Debtor to incur fees and expenses asking for documentation that LVNV was required to produce at the outset constitutes undue; prejudice to the Debtor. LVNV's initial failure to comply with Bankruptcy Rule 3001 not only harms the Debtor and reduces the probability that he will be able to propose and maintain payments on a feasible plan of reorganization; it also inures to the detriment of every other unsecured creditor. Every penny the Debtor expends to pay his attorney's priority claim for fees necessarily reduces the amount available to pay general unsecured creditors. "[T]he fact is that debtors in chapter 13 frequently live so close to the line that every penny counts: Every penny that they keep, and every penny that they put toward their plan." *See In re Fauntleroy*, 311 B.R. 730, 739 (Bankr. E.D.N.C.2004); *see also In re T–H New Orleans Ltd. P'ship*, 116 F.3d 790, 802 (5th Cir.1997) (noting that the dual aims of bankruptcy are payment of claims and a debtor's ability to obtain a fresh start).

LVNV's practice of ignoring the requirements of Bankruptcy Rule 3001 by failing to produce documentation to support its claims unless and until it becomes "aware of an objection" causes undue prejudice to the Debtor, all unsecured creditors, and, indeed, the entire bankruptcy system, by requiring unnecessary hearings.[13] LVNV

---

**13.** Stromberg's statement at the May 21, 2009 hearing that he and his client, LVNV, attempt to obtain the documents; that Bankrupty Rule 3001 requires to be attached to a proof of claim only after they become aware of an objection may properly be imputed to his client, LVNV. *See, e.g., Link v. Wabash R.R.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the conse-

quences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." (internal marks and citations omitted)); *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir.1986) ("[A] litigant is bound by his lawyer's acts."). Thus, LVNV, through

and Stromberg's disregard for Bankruptcy Rule 3001, which made the late-filed amendments necessary, caused the Debtor to incur unnecessary attorney's fees and depleted the limited pool of funds available for the Debtor to reorganize and pay other creditors. "Lawyers of experience who practice what we boast to be a learned profession owe a duty both to their clients and to the court, and, perhaps, even to other members of their profession who appear as opposing counsel, to prepare cases properly, to give the issues full consideration before preparing pleadings, and, in general, to exercise diligence in the practice of their profession." *Lamar v. Am. Fin. Sys. of Fulton County, Inc.*, 577 F.2d 953 (5th Cir.1978).

Stromberg's failure to heed this Court's ruling against LVNV in *Gilbreath*, this Court's Notice and Order, and applicable case law from the Northern District which arose from cases in which he: was an actual participant, have caused the Debtor to incur considerable costs in objecting to LVNV's woefully deficient proofs of claim and prosecuting those objections at an evidentiary hearing for which Stromberg was unprepared. Therefore, the "undue prejudice" factor also weighs against granting LVNV's motion for leave to amend.

### 5. Futility of the Amendment

■ A court may deny a party's motion for leave to amend if such an amendment would be futile. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003); *see also Callegari v. Thomas*, No. H–06–2843, 2006 WL 3448630, at *8 (S.D.Tex. Nov.28, 2006) (denying plaintiff's first motion for leave to amend where the plaintiff had not alleged "any additional facts not initially pleaded that could, if

necessary, cure the pleading defects"). In *Goldstein*, the court noted that the plaintiffs' awareness of the defendants' objection, coupled with the fact that the plaintiffs had not alleged additional facts that would cure the original pleading's defects, supported the district court's decision to deny leave to amend. *Goldstein*, 340 F.3d at 254–55. Additionally, the Fifth Circuit noted "that the law firm representing the plaintiffs has apparently been previously warned by at least one circuit court against this kind of 'wait and see' approach to requesting leave to amend." *Id.* at 255 n. 6. The Fifth Circuit also echoed the Sixth Circuit's frustration about the "cat and mouse" gamesmanship of class action plaintiffs who file defective pleadings and do not move to amend until an objection is raised. *Id.* at 255 n. 6 (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

This Court shares the frustration expressed by the Fifth and Sixth Circuits. This Court believes that LVNV—like the plaintiffs in *Goldstein*—filed its deficient original proofs of claim without any intention of amending to include the documentation required by Bankruptcy Rule 3001 unless the Debtor lodged an objection. Indeed, LVNV's counsel of record, Stromberg, conceded at the May 21, 2009 hearing that his client and he make no attempt to obtain the documentation required to be attached to proofs of claim under Bankruptcy Rule 3001 until "we're aware of an objection." [Finding of Fact No. 16.] Thus, by Stromberg's own admission, his client and he make a regular practice of engaging of the sort of "wait and see" approach and gamesmanship denounced by the fifth Circuit in *Goldstein*.

---

its counsel of record, Stromberg, has admitted that it willfully withholds the documentation required to be included with its original

proofs of claim until the debtor lodges an objection.

■ Additionally, as in *Goldstein*, LVNV's amended proofs of claim are futile. First, as this Court expressed at the May 21, 2009 hearing, the documents attached to LVNV's amended proofs of claim are insufficient to clothe LVNV's claims with prima facie validity. The first assignment documents attached to LVNV's amended proofs of claim—all of which are virtually identical—merely convey that "subject to the terms and conditions of the Purchase and Sale Agreement," Sherman Originator LLC purchased certain "Accounts described in Section 1.2 of the Agreement" from Citibank. [Findings of Fact No. 11–14.] The second assignment documents attached to LVNV's amended proofs of claim—all of which, again, are virtually identical—purport to transfer "in accordance with the provisions of the Sale Agreement," certain "Receivable Assets (as defined in the Agreement) identified on the Receivable File" between Sherman Originator LLC and LVNV. [Findings of Fact No. 11–14.] Additionally, although LVNV saw fit to submit a smattering of invoices indicating that certain accounts in the Debtor's name were charged for various amounts in 2005 and 2006, none of these invoices reflect the amounts claimed by LVNV in its amended proofs of claim.

■ Based on these documents, LVNV urges this Court, the Debtor, and, indeed, every other unsecured creditor or party-in-interest to presume (a) that the Debtor's accounts were among the bundle of accounts (twice) transferred, (b) that the accounts in question are based on valid and enforceable contracts between the Debtor and the original account holder, and (c) that the amounts claimed by LVNV in its amended proofs of claim 12 through 15 are the correct amounts owed by the Debtor despite the fact that none of the invoices provided by LVNV reflect an account balance in those amounts. This Court will

not make any of these presumptions. In order to comply with Bankruptcy Rule 3001 and avail its claims of prima facie validity, it was incumbent on LVNV to provide "an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined." *In re Armstrong*, 320 B.R. at 106. Additionally, because LVNV purports to be the second assignee of the Debtor's accounts, it was required to "document its ownership of the claim" and produce "a signed copy of the assignment and sufficient information to identify the original credit card account." *Id.* (quoting *In re Hughes*, 313 B.R. 205, 212 (Bankr.E.D.Mich.2004)).

Because LVNV's amended proofs of claim fail to satisfy the requirements of Bankruptcy Rule 3001, its late attempt to amend its proofs of claim is futile. Therefore, the "futility" factor also weighs against granting LVNV's motion for leave to amend its proofs of claim.

In sum, all five factors that may properly form the basis for a trial court's decision to deny a party leave to amend pursuant to Rule 15 are present in this case. Notably, only one of these factors would have provided sufficient grounds for this Court to refuse to grant LVNV's Motion for Leave. Thus, this Court concludes that the Motion for Leave should be denied. The consequence of this ruling is that LVNV's claims are not prima facie valid, and that LVNV bears the burden of proving the validity of its claims by a preponderance of the evidence under Texas law. In order to meet this burden, LVNV must rely on its original proofs of claim and any evidence adduced at the May 21, 2009 hearing.

## D. Validity of LVNV's Claims 12 Through 15

 While the question of whether LVNV's claims are allowable in bankruptcy "is a matter of federal law and the bankruptcy court's exercise of equitable powers," the underlying validity of LVNV's claims is based on Texas contract law. *See First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1050 (5th Cir.1992). Therefore—because the Debtor's Objections shifted the burden to LVNV to prove the underlying validity of its claims by a preponderance of the evidence—LVNV now has the burden of proving the validity of its claims under Texas law, which requires proof that: (1) enforceable credit card agreements exist between the Debtor and the original account holders; and (2) LVNV is the current owner and holder of any rights under such agreements.

 For a contract to be enforceable under Texas law, a creditor must produce evidence of the contract under which a debtor is allegedly liable. *See Preston State Bank v. Jordan*, 692 S.W.2d 740, 744 (Tex.App.-Fort Worth 1985, no writ). In order to prove the existence of an enforceable credit card agreement, the claimant must produce the agreement or prove up the agreement's material terms. *See, e.g., McElroy v. Unifund CCR Partners*, No. 14-07-00661-CV, 2008 WL 4355276, at *9–10 (Tex App.-Houston [14th Dist.] Aug. 26, 2008, no pet.) (determining that evidence of the debtor's signature card along with thirteen monthly account statements were insufficient to prove the existence of a contract without admitting the cardholder agreement or some other document describing its terms); *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 236 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (determining that the claimant did not adduce sufficient evidence to establish

the existence of a valid and enforceable credit card agreement as a matter of law because the claimant "did not produce the actual agreement or any other document that established the agreed terms, including the applicable interest rate or the method for determining the applicability and amount of finance charges"); *Preston State Bank*, 692 S.W.2d at 743–44 (holding that appellant/claimant failed to prove the existence of a valid and enforceable credit card agreement where "appellant failed to produce any evidence of a contract agreement under which appellee was allegedly liable to it"). Texas law also requires an alleged assignee of a contract to come forward with evidence of the assignment. *See Skipper v. Chase Manhattan Bank USA, N.A.*, No. 09-05-196 CV, 2006 WL 668581, at *1 (Tex.App.-Beaumont, 2006, no. pet.) (citing cases).

 At the May 21, 2009 hearing, LVNV admitted exhibits in support of its proof of claim. [Finding of Fact No. 16.] Those exhibits consist entirely of the documents attached to LVNV's amended proofs of claim. The Court specifically notes that LVNV did not offer into evidence the documents attached to its Response, which consist of selected pages from the Debtor's Schedule F, the two assignment documents in support of each claim that were attached to LVNV's amended proofs of claim, and four documents that appear to be computerized spreadsheet printouts containing a list of account numbers, including those accounts which LVNV contends it presently owns and which form the basis for LVNV's claims. As the Bankruptcy Court for the Northern District of Indiana very recently explained,

> Documents attached to legal briefs, or documents which are merely filed on the court's docket record, do not constitute evidence concerning a matter be-

fore the court unless those documents are specifically made a part of an evidentiary record applicable to a particular proceeding. This is true regardless of the independent admissibility of those documents as established by the submission by which those documents were sought to be placed before the court. Apart from failure to make a record by appropriate means, documents which lack a foundation for admissibility add nothing to the mix.

*In re Watson*, 402 B.R. 294, 297 (Bankr. N.D.Ind. March 11, 2009); *see also In re Reyna*, No. 08–10049–CAG, 2008 WL 2961973, at *6 (Bankr.W.D.Tex. July 28, 2008) ("Roundup Funding presented no evidence to support its claim. Its information was submitted in the form of a response with attached exhibits, all in the nature of argument, and not by affidavit or by witness testimony."). Accordingly, because the documents attached to LVNV's Response are not evidence, this Court may not consider them.

As discussed above, *supra* Part III.C.5, the documents attached to LVNV's amended proofs of claim are insufficient to meet even the minimal requirements set forth in Bankruptcy Rule 3001. If these documents are insufficient to notify Debtors of the basis for the claims and to document that LVNV is the current owner and holder of the claims asserted, they cannot possibly satisfy LVNV's steeper evidentiary burden of proving the validity of its claims by a preponderance of the evidence. As discussed above, the documents submitted by LVNV only reflect that Citibank sold Sherman Originator LLC a bundle of accounts described in some "Purchase and Sale Agreement," which LVNV has not produced, and that Sherman Originator LLC turned around and sold LVNV a number of "Receivable Assets" identified on some "Receivable File," which has also not been produced. [Findings of Fact No.

11–14, & 16.] Additionally, none of the invoices submitted by LVNV in support of its claims reflect that the Debtor owes the amounts asserted by LVNV in Claims 12 through 15. Based on these documents, the Court cannot determine: (a) whether the Debtor owes the amounts sought by LVNV; (b) whether LVNV is, in fact, the current owner and holder of the accounts in question; or (c) whether those credit card accounts are based on valid and enforceable agreements, as required by Texas law.

LVNV has wholly failed to prove that valid and enforceable credit card agreements existed between the Debtor and the original account holders—or to prove the material terms of any such agreements—and has also failed to prove that LVNV is the current owner and holder of the Debtor's accounts. Thus, LVNV, once again, has fallen woefully short of meeting its burden of proving the validity of its claims by a preponderance of the evidence. Because it has failed to do so, this Court concludes that the Debtor's Objections should be sustained and that LVNV's claims should be disallowed.

## IV. CONCLUSION

This Court previously used the term "willful ignorance" to describe the position taken by LVNV and its counsel of record, Stromberg, in this case, but this term is a generous assessment of this attorney and his client's outlook with respect to filing proofs of claim. A more apt description of Stromberg and LVNV's actions in this case is "deliberate malfeasance." Stromberg's former client was a party in the watershed *Armstrong* case, which dealt exclusively with the filing requirements for proofs of claim, and which was issued by three esteemed Bankruptcy Judges for the Northern District of Texas in 2005. Even more noteworthy is the fact that Strom-

berg's client in that case. eCast, had one of its claims disallowed for the very same reason that LVNV's claims were disallowed in the *Gilbreath* opinion issued by this Court in November of 2008. Despite his extensive and direct involvement with issues relating to Bankruptcy Rule 3001 as early as 2005 and as recently as November of last year, Stromberg represented to this Court at the May 21, 2009 hearing that his client and he make no attempt to comply with Bankruptcy Rule 3001 unless and until an objection is filed. Thus, it appears that Stromberg and his client have a standing policy which involves willfully violating Bankruptcy Rule 3001 because it is cost-effective to do so.

This practice, which has been adopted by Stromberg and LVNV despite their undeniable awareness of applicable law, cannot be allowed to continue. It is clear to this Court that Stromberg and LVNV are content to rest on their grossly deficient proofs of claim in the hope that debtors will overlook their violation of Bankruptcy Rule 3001. Apparently, this approach has proven cost effective thus far. However, because the Debtor in this case caught onto LVNV's ruse and because this Court has already taken LVNV to task for a substantially similar failure in a prior case, LVNV will not only suffer disallowance of its claims, but Stromberg, as an officer of this Court, will be made to answer for his flagrant disregard for Bankruptcy Rule 3001, this Court's Notice and Order, and applicable law.

For the reasons set forth above, this Court concludes that the Debtor's Objection should be sustained, LVNV's Motion for Leave should be denied, and LVNV's Claim Numbers 12, 13, 14, and 15 should be disallowed. Additionally, Stromberg will be required to appear and show cause why he should not be sanctioned for repeatedly violating Bankruptcy Rule 3001,

for failing to comply with this Court's procedures, as conspicuously set forth on this Court's website, and for willfully disregarding applicable case law in which he, himself, represented a party who had its claims disallowed for failing to produce sufficient supporting documentation. An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

EXHIBIT A

United States Bankruptcy Court,

S.D. Texas,

Houston Division.

In re Charles D. GILBREATH and Kristin B. Gilbreath, Debtors.

No. 08–32404–H4–13.

June 26, 2009.

Michael Glen Walker, Walker Patterson PC, Houston, TX, for Debtors.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEBTORS' OBJECTION TO CLAIM NUMBER 11, 12, 13, 14, AND 18 OF LVNV FUNDING LLC**

**[Docket Nos. 48–52]**

JEFF BOHM, Bankruptcy Judge.

**I. Findings of Fact**

1. LVNV Funding LLC (LVNV) filed original proofs of claim 11, 12, 13, 14, and 18 in the Debtors' case on May 22, 2008.

2. Each proof of claim contains the last four digits of an account number and the amount due on that account and lists the creditor's name as "LVNV Funding LLC its successors and assigns as assignee of Citibank." LVNV's proofs of claim are signed by Joyce Montjoy, Bankruptcy Re-

covery Manager of Resurgent Capital Services. All of LVNV's proofs of claim are for "unsecured charge off" from various credit card accounts held by the Debtors. Attached to LVNV's original proofs of claim are the following documents:

a. A document attached to proofs of claim 11, 12, 13, 14, and 18 prepared by Resurgent Capital Services containing the last four digits of an account number, the amount due as of the date the bankruptcy case was filed, and a "borrower information" section listing one or the other Debtors as the account holders. This document also explains that Resurgent Capital Services is a company that services accounts on behalf of LVNV.

b. A document attached to proof of claim 11 signed by a representative of Citibank, entitled "Bill of Sale and Assignment of Accounts," which contains the following language:

Citibank (South Dakota), N.A. (successor to Citibank USA, N.A.) ("Seller"), for value received, to the extent permitted by applicable law, and subject to the terms of that certain Purchase and Sale Agreement entered into as of July 11, 2003 (the "Agreement"), by and between Sears, Roebuck and Co., Sears National Bank, SRFG, Inc., SMTB, Inc., SVFT, Inc., SLRR, Inc. and Sears Financial Holding Corporation (collectively, "Originator") and Sherman Originator LLC ("Buyer"), then subsequently assumed by Seller pursuant to that letter dated October 30, 2003, transfers, sells, assigns, conveys, grants and delivers to Buyer, who simultaneously transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Subsequent Buyer") all rights, title and interest in and to the Chapter 13 Accounts which are described on the Disk furnished by Seller to Buyer in connection herewith; (ii) all payments on the proceeds of such accounts (each, an "Account") after the close of business on may 15, 2008, and (iii) all claims arising out of or relating to each Account.

c. A document attached to proofs of claim 12, 13, 14, and 18 entitled "Assignment and Assumption Agreement," which contains the following language:

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT is dated as of May 15, 2008, between Citibank (South Dakota), National Association ... (the "Bank") and Sherman Originator LLC ... ("Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement ... between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, who simultaneously transfers, sells, assigns, conveys, grants, bargains, sets over and delivers to LVNV Funding LLC ("Subsequent Buyer"), and to Subsequent Buyer's, (sic) successors and/or assigns, the Accounts described in Section 1.2 of the Agreement.

3. The Debtors filed objections to LVNV's original proofs of claim 11, 12, 13, 14, and 18 on July 18, 2008. The Debtors' objections to LVNV's proofs of claim complained that LVNV did not attach documentation sufficient to support its claims and that the proofs of claim failed to meet the requirements of Fed. R. Bankr.P. 3001.

4. The Court held a brief hearing on July 21, 2008, and informed the parties that they should return on August 18, 2008 for a trial on the merits.

5. On August 5, 2008, LVNV electronically filed additional documentation in support of its proofs of claim 11, 12, 13, 14, and 18. These filings contain the following documents in addition to those included in LVNV's original proofs of claim:

a. Affidavits signed by LVNV's personal representative certifying the following with respect to claims 11, 12, 13, 14, and 18:

Based on business records maintained on [the Debtor's Account], the Account is the result of an extension of credit or service to Charles Gilbreath by [Sears, Children's Place, Office Depot, Zales, and Citibank South Dakota N.A.] Said business records further indicate that the Account was then owned by Citibank South Dakota N.A. later sold and/or assigned Portfolio [11238, 11240, and 11270] to [LVNV's] assignor, Sherman Originator LLC, which included the [Debtor's] Account on May 15, 2008. Thereafter, all ownership rights were assigned to, transferred to and became vested in [LVNV] . . . .

[Docket Nos. 66–70.]

b. Bills of sale signed by a representative of Sherman Originator LLC (Sherman), which purport to convey to LVNV, "in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, . . . the Receivable Assets (as defined in the Agreement) identified in the Receivable File dated 5/31/08." [Docket Nos. 66–70.]

c. What appears to be portions of a computer file listing the Debtors' names and addresses, account numbers, and the balances on their respective accounts. [Docket Nos. 66–70.]

d. A power of attorney granting Resurgent Capital Services, the company that prepared and executed LVNV's original proofs of claim, authority to service LVNV's accounts and to file and sign proofs of claim. [Docket Nos. 66–70.]

6. On August 18, 2008, the Court held a hearing on Debtors' Objections to LVNV's proofs of claim. At the hearing, the Debtors argued that LVNV did not properly document its ownership of the accounts in question and therefore does not have standing as a matter of law to bring claims based on those accounts. The Debtors also asserted that the additional documents filed by LVNV on August 5, 2008 are insufficient to establish the validity of claims 11 through 14 and 18. In closing, the Debtors argued that LVNV's practice of filing proofs of claim without supporting documentation violates Bankruptcy Rule 3001 and that LVNV should not be allowed to retroactively comply with the rules by filing supporting documentation only after the Debtor objects and a hearing has been scheduled. LVNV did not move to admit any exhibits and did not offer any evidence at the hearing; LVNV's attorney made solely legal arguments. Thus, the record is bare.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). This dispute is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). Venue is proper pursuant to 28 U.S.C. § 1408(1).

## B. LVNV's Burden of Production with Respect To its Original Proofs of Claim

A proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a); Fed. R. Bankr.P. 3001(f). However, proofs of claim that fail to comply with the Bankruptcy Rules are not *prima facie* valid and are therefore not deemed allowed. *See Brock v. Brock (In re Brock)*, No. 06–4228, 2008 WL 2954621, at *6 (Bankr.E.D.Tex. July 31, 2008); *In re Reyna*, No. 08–10049–CAG, 2008 WL 2961973, at *3–6 (Bankr.W.D.Tex. July 28, 2008); *In re White*, No. 06–50247–RLJ13, 2008 WL 269897, at *3–5 (Bankr.N.D.Tex. Jan.29, 2008).

### 1. *Prima Facie* Validity of LVNV's Original Proofs of Claim

With respect to LVNV's original proofs of claim, counsel for LVNV argues that proofs of claim need not include supporting documentation—that supporting documentation need only be attached once a debtor objects and a dispute arises. In support of his contention, LVNV's counsel relies on the language of Bankruptcy Rule 3001(f), which states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity of the amount of the claim." Fed. R. Bankr.P. 3001(f). With regard to assigned claims, LVNV's counsel asserts that, because Bankruptcy Rule 3001(e) requires that "evidence of the transfer shall be filed by the transferee" on claims trans-ferred *after* the proof of claim is filed, and is silent as to evidence required on claims transferred *before* the proof of claim is filed, no supporting evidence is required on the latter proofs of claim. *See* Fed. R. Bankr.P. 3001(e)(*l*)-(4).

LVNV's arguments ignore the plain language of Bankruptcy Rule 3001(a) and (c), the clear instructions on the Official Proof of Claim Form (Form 10), and the wealth of case law on the issue in this Circuit.

Bankruptcy Rule 3001(a) mandates that "[a] proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr.P. 3001(a). Additionally, Bankruptcy Rule 9009 states that the Official Forms "shall be observed." Fed. R. Bankr.P. 9009. Paragraph 7 of the official proof of claim form (Form 10) directs the creditor to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements" or a summary of such documents. Paragraph 7 of Form 10 also directs that "[i]f the documents are not available, please explain." It is difficult to understand how a creditor could substantially comply with this instruction by filing a bare bones proof of claim without any explanation. At the very least, Form 10 instructs creditors to give a reason why supporting documents have not been attached.

Moreover, Bankruptcy Rule 3001(c) provides that when a claim is based on a writing (i.e. a credit card agreement),[1] "the original or duplicate shall be filed with the proof of claim," and "[i]f the writing has been lost or destroyed, a statement of the

---

1. The District Court, in *Tran*, looking to Texas state law to determine the substance of the claims at issue, affirmed the bankruptcy court's ruling that claims to recover amounts on a credit card account are "claims based on a writing," which must comply with Fed. R. Bankr.P. 3001(c). *See eCast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 316–17 (S.D.Tex.2007).

circumstances of the loss or destruction shall be filed with the claim." Fed. R. Bankr.P. 3001(c). This language could not be more clear—creditors must attach documents giving rise to a claim (or copies of such documents) to their proof of claim or explain why they have not. *See also In re Hight,* No. 07–36683, 2008 WL 3539802, at *5 n. 7 (Bankr.S.D.Tex. Aug.13, 2008) (determining that a creditor that failed to attach any supporting documentation to support its claims violated Bankruptcy Rule 3001(c)).

Indeed, the District Court for the Southern District of Texas recently affirmed the ruling by Bankruptcy Judge Brown that proofs of claim to recover amounts on a credit card account must be accompanied by either writings on which they were based or by an explanation of why such writings were not provided. *eCast Settlement Corp. v. Tran (In re Tran),* 369 B.R. 312, 316–17 (S.D.Tex.2007). Further, Bankruptcy Judges Felsenthal, Houser, and Hale, of the Northern District of Texas, determined that a lack of supporting documentation strips a claim of any *prima facie* validity. *In re Armstrong,* 320 B.R. 97, 104–05 (N.D.Tex.2005). The *Armstrong* court held that

> in the case of a credit card or consumer account creditor, in order for the proof of claim to be given *prima facie* effect, the creditor must attach an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined.

*Id.* at 106.

The *Armstrong* court also determined that a "transferee has an obligation under Bankruptcy Rule 3001 to document its ownership of the claim ... [by] attach[ing] a signed copy of the assignment and sufficient information to identify the original credit card account." *Id.* (internal marks omitted) (quoting *In re Hughes,* 313 B.R. 205, 212 (Bankr.E.D.Mich.2004)). Bankruptcy Judge Jones, also of the Northern District, rejected the argument that Bankruptcy Rule 3001(e)'s silence as to evidentiary requirements for claims assigned before the proof of claim was filed eliminates the need to comply with Bankruptcy Rule 3001(c) and Form 10. *See In re White,* 2008 WL 269897, at *4–5.

LVNV's original proofs of claim do not comply with Bankruptcy Rule 3001, the instructions in Form 10, or applicable law. First, LVNV failed to "[a]ttach redacted copies of any documents that support the claim," or a summary thereof in accordance with Rule 3001 and Form 10. LVNV instead attached a document prepared by its servicer containing the same information contained on the proof of claim form: the last four digits of the Debtors' account number and the amount owing on the account. LVNV did not attach the credit card agreement between the Debtors and the original credit card issuer, nor did it attach any summary thereof or give an explanation as to why supporting documents have not been provided. Second, LVNV checked the box in Form 10 to indicate that its claim includes interest or other charges in addition to principal. However, the form requires creditors who check this box to "[a]ttach [an] itemized statement of interest or charges," which LVNV failed to do. Third, the only other document attached to LVNV's original proofs of claim is a purchase agreement between Citibank and LVNV, which purports to transfer certain unnamed accounts (originally belonging to a credit card issuer, then sold to Sherman, then sold to Citibank) to LVNV. LVNV did not include

the purchase agreement between the original card issuer and Sherman, nor did it include the purchase agreement between Sherman and Citibank. The purchase agreement provided by LVNV does not establish LVNV's ownership of the Debtors' accounts. Therefore, LVNV failed to provide "sufficient information to identify the original credit card account," or to "document ownership" of its claims. *Armstrong*, 320 B.R. at 106.

Further, the information provided in the proof of claim form and LVNV's attached documents does not suffice to establish *prima facie* validity of LVNV's claims. LVNV has not attached any account statements, provided any information concerning the interest rate or finance charges or other fees that comprise the balance of the debt (despite having checked the box indicating that its claim includes interest and fees), or attached monthly statements so that this information can be determined. All of this information was required for LVNV's claims to enjoy *prima facie* validity. *Id.*

LVNV's argument that proving claims is too expensive is of no import. This Court has a duty to enforce the Bankruptcy Rules and the Bankruptcy Code as written. Even if the Court were inclined to consider the potential costs of complying with the Bankruptcy Rules, its decision would be the same. Bankruptcy Rule 3001(c) provides that if the documents supporting the creditor's claim cannot be produced, "a statement of the circumstances of the loss or destruction shall be filed with the claim." Fed. R.Bankr.P. 3001(c). Further, paragraph 7 of Form 10 allows a creditor to attach a summary of documents supporting the claim and requires some explanation if the documents are unavailable. These rules and instructions appear to be designed specifically to accommodate creditors like LVNV, who claim to be unable to produce documents. Given these provisions, it is difficult to understand how providing a summary of documents supporting a claim, or at least providing an explanation for why the proof of claim has nothing attached to it, unduly burdens creditors. The only explanation could be that certain creditors wish to continue their routine of executing and filing proofs of claim without objection and without any evidence—essentially, without having to do any work. This practice violates the Bankruptcy Rules and undermines the bedrock notion of the legal system that claimants bear the burden of proving their claims. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 21, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (recognizing that "the burden of proof is an essential element of the claim itself," and that "one who asserts a claim [has] the burden of proof that normally comes with it").

For the reasons stated above, LVNV's original proofs of claim do not comply with Bankruptcy Rule 3001 and are not *prima facie* valid. Claims to recover amounts charged on credit card accounts must be accompanied by adequate supporting documents or copies thereof or, at the very least, an explanation of why such documents could not be produced. LVNV did neither in the case at bar. Further, because LVNV's claims have allegedly been assigned to it, proof of the assignments must also be provided to have standing. For all of these reasons, LVNV has failed to meet its initial burden of production with regards to original proofs of claim 11, 12, 13, 14, and 18.

### 2. Consequences of Failing to Attach Sufficient Documentation to Proofs of Claim

Although incomplete or insufficient proofs of claim are *not prima facie* valid, they are not automatically disallowed. *See*

*In re Armstrong,* 320 B.R. at 106. The debtor, however, "has no evidentiary burden to overcome" when objecting to a claim that is not *prima facie* valid. *In re Tran,* 369 B.R. at 318. Once the debtor objects to a proof of claim, the claim's validity becomes a "contested matter" and the burden shifts back to the creditor to prove the claim is valid by a preponderance of the evidence. *See* 11 U.S.C. § 502; *In re O'Connor,* 153 F.3d 258, 260–61 (5th Cir.1998); *In re Fid. Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir.1988). Because the Debtors in the case at bar are objecting to proofs of claim that do not enjoy *prima facie* validity, the Debtors do not have to overcome any evidentiary presumption in making their objections.[2] The

---

**2.** Courts disagree about the consequences of a creditor's failure to comply with Bankruptcy Rule 3001 and the instructions in Form 10. The Tenth Circuit Bankruptcy Appellate Panel (BAP) recently explained that two main schools of thought have developed on the subject—the "exclusive view" and the "nonexclusive view." *B–Line, L.L.C. v. Kirkland (In re Kirkland),* 379 B.R. 341, 344 (B.A.P. 10th Cir.2007). Courts adopting the "exclusive view" hold that 11 U.S.C. § 502(b) provides the exclusive basis for disallowance of claims, and that the creditor's failure to attach documents, alone is not a basis for an objection. *Id.* at 344 n. 10 (listing courts that have adopted the "exclusive view"). The Tenth Circuit BAP also adopted the "exclusive view" in *Kirkland. Id.* at 344. Courts adopting the "nonexclusive view" hold that a creditor's failure to attach supporting documents is a valid ground for a claim objection, and that, once an objection is lodged, the claim must be disallowed if the creditor fails to prove its claim at the claim objection hearing. *Id.* at 344 n. 11 (listing courts that have adopted the "nonexclusive view"). So far, courts within the Fifth Circuit have adhered to the "nonexclusive view." *See In re Armstrong,* 320 B.R. at 106; *In re Tran,* 369 B.R. at 318.

Courts applying the "exclusive view" frequently make a distinction between "technical" and "substantive" objections. The Tenth Circuit BAP in *Kirkland,* for example, determined that an objection based solely on insufficient documentation that does not actually dispute liability for the debt is merely "technical," and does not invoke any of the statutory grounds for disallowance in 11 U.S.C. § 502(b). *Kirkland,* 379 B.R. at 346–47. To allow such a technical objection, *Kirkland* explains, would allow debtors to weasel out of undisputed debts and require unnecessary hearings. *Id.* at 348–49.

This Court need not decide the issue since the Debtors made substantive objections (i.e. that the Debtors did not owe LVNV anything because there was no proof of assignment). However, this Court believes that the "nonexclusive view" is particularly applicable in a case where, as here, a creditor files a skeletal proof of claim with no documentation attached to it. Although a debtor's claim objection must be couched in one of the statutory grounds for disallowance in § 502(b), complaining that the creditor has offered no documentation in support of its claims necessarily asserts that the claim is "unenforceable against the debtor ... under ... applicable law" under § 502(b)(1). 11 U.S.C. § 502(b)(1). This Court knows of no jurisdiction where a claim arising out of a credit card agreement is enforceable without proof of the underlying agreement. Neither is this Court aware of any jurisdiction where a purchaser of contract rights may establish the enforceability of those rights without proof of purchase. The technical/substantive distinction for claim objections seems; more applicable in a case where the creditor has at least made a good faith attempt to comply with Bankruptcy Rule 3001. Such is not the case here. If a creditor willfully disregards the language of Bankruptcy Rule 3001 by filing a proof of claim without documentation, then the debtor's objection about insufficient documentation should likewise be sufficient to shift the burden back to the creditor to produce the documents that it was required to produce in the first place. Otherwise, the technical/substantive distinction would render Bankruptcy Rule 3001 toothless. Bankruptcy Rule 3001 would never be enforced if debtors could not effectively object to proofs of claims for noncompliance with that rule. Further, it is the creditor's violation of Bankruptcy Rule 3001, not the debtor's objection, that creates the need for unnecessary hearings.

Debtors' objections are sufficient to shift the burden back to LVNV to prove ownership and validity of its claims in accordance with state law.

## C. LVNV's Post–Objection Amendments to its Proofs of Claim

Before this Court proceeds with its analysis of the validity of LVNV's claims, it must first determine whether to consider LVNV's original proofs of claim or its proofs of claim as amended by LVNV's August 5, 2008 filings. If LVNV failed to properly amend its proofs of claim, LVNV must rely solely on its original proofs of claim to satisfy its burden of proof.

The Debtors filed their objections to LVNV's original proofs of claim on July 18, 2008. LVNV electronically filed affidavits and other documents in support of claims 11, 12, 13, 14, and 18 on August 5, 2008. Thus, LVNV amended all its claims without leave of Court or the consent of the Debtors after the Debtors lodged their objection. This case presents an interesting (and apparently novel) question: May a claimant freely amend its proof of claim after the debtor has objected and initiated a contested matter? [3]

### 1. Applicability of Bankruptcy Rule 7015 to Contested Matters

Generally, a creditor may freely amend its proofs of claim before they are successfully objected to by the debtor. *See, e.g., First Nat'l Bank of Mobile v. Everhart (In re Commonwealth Corp.),* 617 F.2d 415, 422 n. 12 (5th Cir.1980) (noting that "amendment of claims in bankruptcy is liberally allowed" within statutory limits). However, once the debtor objects to a proof of claim, it becomes a "contested matter" under Bankruptcy Rule 9014. *See In re Cloud,* No. 99–51109, 2000 WL 634637, at *2 (5th Cir.2000) (unpublished); *see also* Fed. R. Bankr.P. 3007, advisory committee's note ("The contested matter initiated by an objection to a claim is governed by rule 9014. . . ."); Fed. R. Bankr.P. 9014, advisory committee's note ("[T]he filing of an objection to a proof of claim . . . creates a dispute which is a contested matter. . . ."). Further, Bankruptcy Rule 9014 makes applicable certain procedural rules contained in Part VII of the Bankruptcy Rules, and allows the court to "at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." Fed. R. Bankr.P. 9014(c). Bankruptcy Rule 7015 makes Federal Rule of Civil Procedure 15 (Rule 15), governing amendments, applicable in adversary proceedings. Taken together, Bankruptcy Rules 9014 and 7015 make Rule 15 applicable in contested matters at the Court's election.[4]

---

**3.** This Court recently held that Bankruptcy Rule 7015, and, by extension, Federal Rule of Civil Procedure 15, applied where another creditor in this case attempted—without leave of court—to amend its proofs of claim, which originally attached no documents, after the debtor lodged an objection on the grounds that the original proofs of claim contained no documents evidencing ownership of the debt. *In re Gilbreath,* 395 B.R. 356, 365–67 (Bankr. S.D.Tex.2008). The Court shall therefore reiterate its reasoning from *Gilbreath* in the present case.

**4.** The Court takes note of the bankruptcy courts in other circuits that have determined

that Bankruptcy Rule 7015 is inapplicable to contested matters. *Cf. In re Carr,* 134 B.R. 370, 372 (Bankr.D.Neb.1991); *In re Calisoff,* 94 B.R. 1002, 1003 n. 2 (Bankr.N.D.Ill.1988). These courts have so held because Bankruptcy Rule 9014 does not expressly list Bankruptcy Rule 7015 among the rules in Part VII that "shall apply" in contested matters. However, this logic disregards the language of Bankruptcy Rule 9014(c), which states that "[t]he court may at any stage in a particular matter direct that one or more of the *other rules* in Part VII shall apply." Fed. R. Bankr.P. 9014(c).

Further, most bankruptcy courts have recognized that "[t]he trend of the cases appear to apply Rule 7015 to contested matters." *In re MK Lombard Group I, Ltd.,* 301 B.R. 812, 816 (Bankr.E.D.Pa. 2003); *see also, e.g., In re Stavriotis,* 977 F.2d 1202, 1204 (7th Cir.1992) (noting that Bankruptcy Rule 9014 permits extension of Rule 7015 to contested matters); *In re Best Refrigerated Express, Inc.,* 192 B.R. 503, 506 (Bankr.D.Neb.1996) (applying Rule 7015 through Rule 9014 to allow amendment to filed proof of claim to relate back); *Enjet, Inc. v. Maritime Challenge Corp. (In re Enjet, Inc.),* 220 B.R. 312, 314 (E.D.La.1998) (noting that "numerous courts have applied Rule 7015 and Rule 15(c) explicitly or by analogy in non-adversary [bankruptcy] proceedings"); *In re Brown,* 159 B.R. 710, 714 (Bankr.D.N.J. 1993) (noting that Rule 15's "standards for allowing amendments to pleadings in adversary proceedings ... also apply to amendments to a proof of claim"); *In re Blue Diamond Coal Co.,* 147 B.R. 720, 725 (Bankr.E.D.Tenn.1992) (extending Rule 9014 to apply Rule 7015 to contested matters); *In re Enron Corp.,* 298 B.R. 513, 521–22 (Bankr.S.D.N.Y.2003) (invoking Rule 9014 to apply Rule 7015); 10 Collier on Bankruptcy ¶ 7015.02 n. 1 (Matthew Bender 15th ed. Rev.).

Rule 15 requires claimants to obtain "the opposing party's written consent or the court's leave" to amend their claim after being served with a response (here, a written objection). Fed.R.Civ.P. 15(a)(2). It is therefore within this Court's power and discretion to refuse to consider the materials submitted by LVNV on August 5, 2008, in support of claim 11, 12, 13, 14, and 18, which were filed without the Court's leave or the Debtors' consent after the Debtors lodged their claim objections.

### 2. The Court's Equitable Power to Allow or Disallow Amendments to Contested Proofs of Claim Filed Without Leave of Court

Even if Bankruptcy Rule 7015 is reserved solely for adversarial proceedings, a number of courts have determined that proof of claim amendments are subject to the court's equitable powers under 11 U.S.C. § 105(a). *See United States v. Johnston,* 267 B.R. 717, 721 (N.D.Tex. 2001); *see also In re Eden,* 141 B.R. 121, 123–24 (Bankr.W.D.Tex.1992) (recognizing that "many bankruptcy courts—for equitable reasons—do permit amendments to proofs of claim, even past the bar date"). The Seventh Circuit explained that "[Bankruptcy] Rule 7015 is not ... the only possible authority for amendment. Another possible basis is the bankruptcy court's broad equitable jurisdiction." *In re Unroe,* 937 F.2d 346, 349 (7th Cir.1991). The District Court for the Northern District of Texas also determined that a bankruptcy court has authority to regulate amendments under its equitable powers pursuant to 11 U.S.C. § 105(a). *Johnston,* 267 B.R. at 721 (concluding that "the [bankruptcy] court's power to prevent abuse of process includes bending the time requirements ... to permit amendments" (internal marks omitted)).

### 3. Ruling on LVNV's Post–Objection Amendments

This Court is not prepared to make an ultimate determination as to whether every amendment to a proof of claim filed after the debtor objects requires strict adherence to Rule 15, and these are not the facts on which to do so. The Court does, however, believe that a bankruptcy court's equitable powers play some role in determining whether or not to allow an amendment filed without leave or consent in a contested matter. *See* Fed. R.

Bankr.P. 9014(c) (stating that the bankruptcy court "may" direct that other rules in Part VII shall apply). Here, LVNV's amendments (in the form of electronically filed affidavits), all of which were submitted fifteen days after this Court set the Debtor's objections for a hearing, should be subject to the strictures of Rule 15, incorporated through Bankruptcy Rule 7015. Creditors should not be permitted to file defective proofs of claim in hopes that the debtor will not object, but then, when the debtor does object and the matter is set for a hearing, to file the necessary supporting documents. This is one of the reasons Rule 15 was enacted—to prevent undue prejudice and surprise to litigants and to permit opposing parties time to prepare for trial. *See United States v. Saenz,* 282 F.3d 354, 356 (5th Cir.2002) (determining that "prejudice to the opposing party," "bad faith," and "repeated failure to cure deficiencies" are considerations under Rule 15).

LVNV knew that the Debtors had objected to its original proofs of claim on July 18, 2008, but waited until *well after* this Court set the Debtor's objections for a hearing to amend the proofs of claim. Indeed, the amendments were filed (August 5, 2008) less than two weeks prior to the scheduled August 18, 2008 hearing—which made it virtually impossible for the Debtors to conduct any discovery about the amendments, including taking the deposition of the individual who signed the affidavits that comprised the amendments. These tactics, taken together with LVNV's blatant disregard for Bankruptcy Rule 3001 and the instructions in Form 10 requiring LVNV to attach documents to its original proofs of claim—*see infra,* Section II(B)(1)—speak to the inequity of permitting LVNV to amend its deficient proofs of claim without leave or consent. Therefore,

the Court, pursuant to Bankruptcy Rules 9014 and 7015, Rule 15, and its equitable powers under 11 U.S.C. § 105(a), will not allow these amendments to LVNV's proofs of claim 11, 12, 13, 14, and 18. Because LVNV's amendments are disallowed, its original proofs of claim are all that remain to withstand the Debtors' objection.

### D. Validity of LVNV's Original Proofs of Claim

The validity of LVNV's claim is based on Texas contract law, but whether its claim is allowable in bankruptcy "is a matter of federal law and the bankruptcy court's exercise of equitable powers." *See First City Beaumont v. Durkay (In re Ford),* 967 F.2d 1047, 1050 (5th Cir.1992). Section 502(b) provides nine grounds for disallowing a claim that has been objected to. 11 U.S.C. § 502(b). One of these grounds is that the claim "is unenforceable against the debtor under ... applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1). Courts have uniformly interpreted this to mean that a claim may be disallowed if it is unenforceable under applicable state law. *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007) (recognizing that § 502(b)(1) "requires bankruptcy courts to consult state law in determining the validity of most claims").

Under Texas law, a credit card issuer must prove that an enforceable contract exists under which the debtor is liable. *See Preston State Bank v. Jordan,* 692 S.W.2d 740, 744 (Tex.App.-Fort Worth 1985, no writ). Texas law also requires an alleged assignee of a contract to come forward with evidence of the assignment. *See Skipper v. Chase Manhattan Bank USA, N.A.,* No. 09–05–196 CV, 2006 WL 668581, at *1 (Tex.App.-Beaumont 2006, no

pet. hist.) (citing cases). Therefore, LVNV has the burden of proving the validity of its underlying claim, which, under Texas law, requires (1) proof of an enforceable contract between the Debtors and the original creditor, and (2) proof of any subsequent assignment of that contract to LVNV.

The inevitable result of the disallowance of LVNV amendments is that LVNV's original proofs of claim must, alone, be sufficient to establish the validity of its claims. This is clearly not the case. First, as stated above, LVNV's original proofs of claim do not sufficiently document LVNV's ownership of claims 11, 12, 13, 14, or 18. In fact, there are at least two missing links in LVNV's chain of title. Second, LVNV provided no evidence that an enforceable contract existed between the Debtors and the original credit card issuer. Therefore, LVNV's original proofs of claim are insufficient to establish that LVNV's claims are valid under Texas law.

**E. Even if LVNV's amendments were allowed, LVNV has still failed to establish the validity of claims 11, 12, 13, 14, and 18.**

Even if this Court is incorrect in its conclusion that Bankruptcy Rule 7015 applies in this case and that LVNV's amendments to its proofs of claim should be disallowed, the additional documents submitted by LVNV on August 5, 2008 are still insufficient to establish the validity of claims 11, 12, 13, 14, and 18 by a preponderance of the evidence.

**1. Proof of Ownership**

In order to establish the validity of proofs of claim 11 through 14 and 18 over the Debtors' objection, LVNV had the burden of proving that it actually owns the claims. *See In re Armstrong*, 320 B.R. at

106 (requiring a creditor to prove ownership of the claim by attaching a "signed copy of the assignment and sufficient information to identify the original credit card account"); *In re Reyna*, 2008 WL 2961973, at *5–6 (disallowing creditor's claim where there was "no evidence to link the entity assigning the claim with an entity listed on the debtor's schedules"); *In re Leverett*, 378 B.R. 793, 801 (Bankr. E.D.Tex.2007) (requiring, at a minimum, that credit card claimants "include[ ] or attach[ ] documentary or other evidence pertaining to how it acquired the claim and showing that it is the current holder of the claim"); *In re Padilla*, No. 04–42708 H213, 2006 WL 2090210, at *4 (Bankr.S.D.Tex. June 29, 2006) (sustaining objections to a creditor's assigned claims where there was no proof of the assignment).

The Court notes, at the outset, that LVNV did not offer any evidence in support of its original or amended proofs of claim at the hearing. Although LVNV attached documents to its pleadings in the form of exhibits, LVNV's counsel never moved to admit these documents at the August 18, 2008 hearing. *See In re Wilmington Hospitality L.L.C.*, No. 01–19401DWS, 2003 WL 21011689, at *1 n. 1 (Bankr.E.D.Pa. Apr.18, 2003) ("[D]ocuments attached to pleadings are not evidence."). Therefore, LVNV has no evidence to support a claim. However, even if LVNV had moved to admit the exhibits attached to its pleadings, these exhibits would still be insufficient to establish the validity of LVNV's claims. The Court proceeds with its analysis under the fiction that the exhibits electronically filed on the docket had actually been offered as evidence.

**a. LVNV's Submitted Affidavits**

Affidavits may well be sufficient to establish the *prima facie* validity of an un-

challenged proof of claim, but once the debtor makes an objection (as the Debtors have done here), a creditor has the burden of proving its claims by a preponderance of the evidence as it would in any trial on the merits. *In re Fid. Holding,* 837 F.2d at 698. Affidavits, such as those submitted by LVNV, are generally inadmissible in a trial on the merits unless they qualify under an exception to the hearsay rule or contain statements made by party opponents.[5] *Bd. of Pub. Instruction v. Meredith,* 119 F.2d 712, 713 (5th Cir.1941) ("[U]sually ex parte affidavits are not sufficient to prove material facts in a contested case ...."); *see also, e.g., FTC v. Nat'l Bus. Consultants, Inc.,* 376 F.3d 317, 322 n. 9 (5th Cir.2004) (determining that certain affidavits were hearsay and did not qualify for any exception under Fed. R.Evid. 803 or 804).

The affidavits filed by LVNV in support of proofs of claim 11, 12, 13, 14, and 18 contain inadmissible hearsay. All of LVNV's affidavits have been executed and signed by Sherrie A. Emerson (Emerson), an employee of LVNV. [Docket Nos. 66–70.] These affidavits contain out of court statements offered to prove the truth of their assertions. Emerson did not appear to give live testimony at the August 18, 2008 hearing on the Debtors' objections to the amended proofs of claim and was therefore not subject to cross examination, which deprives the Debtors of due process. *See Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) ("[T]he Confrontation Clause is violated when hearsay evidence is admitted as substantive evidence against the defendant with no opportunity to cross examine the hearsay declarant at trial."); *Mattox v. United States,* 156 U.S. 237, 242, 15 S.Ct. 337, 39 L.Ed. 409 (1895) ("The primary object of the [Confrontation Clause] was to prevent depositions or ex parte affidavits ... being used ... in lieu of a personal examination and cross examination of the witness.").

Additionally, the statements made in paragraph 3 of each affidavit are, in some cases, triple hearsay. For example, in all of LVNV's affidavits, Emerson testifies as to the accuracy of LVNV's business records, which are a "compilation" of informa-

---

**5.** Affidavits are typically submitted by parties on motions for summary judgment (for consideration of whether any genuine issue of material fact exists for trial), and are generally inappropriate for use at trial because of their hearsay character. *See* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2738, at 330–33 (3d ed.1998) ("[E]x parte affidavits, which are not admissible at trial, are appropriate on a summary-judgment hearing to the extent they contain admissible information."). Here, LVNV relies predominantly on affidavits to defend the validity of its proofs of claim after the Debtors objected to the original claims for, among other reasons, the absence of sufficient documentation showing LVNV's ownership of the debt. Because a bona fide dispute has arisen, and because these affidavits contain hearsay statements that do not fall within any exception, they are inadmissible and cannot satisfy LVNV's burden of proof.

Although Federal Rule of Civil Procedure 43, applicable to bankruptcy cases under Fed. R. Bankr.P. 9017, suggests that affidavits may be admissible in motion practice, that rule contains discretionary language. Fed. R.Civ.P. 43(c) ("When a motion relies on facts outside the record, the court *may* hear the matter on affidavits or *may* hear it wholly or partly on oral testimony or on depositions." (emphasis added)). The Court finds that affidavits should be given no weight in this case, where LVNV was given ample opportunity to present its case at a hearing with live testimony from witnesses. Moreover, that LVNV has the burden of proving the validity of its claims by a preponderance of the evidence, as it would in any civil trial on the merits, suggests that the hearsay character of LVNV's affidavits should not be ignored.

tion provided to LVNV by Sherman. [Docket Nos. 66–70.] She also certifies that "[t]he records provided to [LVNV] *have been represented*" (presumably by Sherman) "to include information provided by Citibank." [Docket Nos. 66–70.] According to these affidavits, LVNV's claims are the result of an extension of credit to the Debtors by Sears, Children's Place, Office Depot, and Zales, and that the Debtor's account was subsequently assigned to Citibank, then to Sherman, and finally to LVNV. [Docket Nos. 66–70.] Ms. Emerson is not competent to testify as to the accuracy of the business records of LVNV's predecessors. Further, LVNV's business records are based entirely on information transmitted from Citibank to Sherman, and then from Sherman to LVNV. These statements are triple hearsay, which is manifestly unreliable and will not be considered by the Court.

Emerson's statements in LVNV's affidavits do not fall under any hearsay exception. Therefore, even if LVNV had offered its affidavits at the hearing—which it did not—the Court would have sustained an objection to their inadmissibility, and the affidavits would have held no evidentiary weight.[6]

### b. LVNV's Submitted Bills of Sale

LVNV's submitted bills of sale are also insufficient to establish LVNV's ownership of claims 11, 12, 13, 14, and 18. At most, the bills of sale submitted by LVNV suggest that certain accounts (not necessarily the Debtors') were transferred from Citibank to Sherman, and then to LVNV.

The first bill of sale submitted by LVNV in support of its proof of claim 11 is sub-

ject to "the terms of that certain Purchase and Sale Agreement" between Sears and Sherman, which was subsequently assumed by Citibank and ultimately by LVNV. [Docket No. 66.] This bill of sale purports to transfer "all rights, title and interest in and to the Chapter 13 Accounts which are described on the Disk furnished by [Citibank] to [Sherman]." [Docket No. 66.] LVNV has not provided, nor has it attempted to prove the contents of, this "Disk," and this Court will not presume that the Debtors' accounts are on it.

Similarly, the first bill of sale LVNV submitted in support of its proofs of claim 12, 13, 14, and 18 relies on a "Purchase and Sale Agreement dated December 16, 2005, between [Sherman] and [Citibank]" and purports to transfer "Accounts described in Section 1.2 of the Agreement." [Docket Nos. 67–70.] LVNV has not provided this "Agreement." Once again, this Court will not presume that the Debtors' accounts are listed in this "Agreement."

The second bill of sale in support of all of LVNV's proofs of claim purports to transfer from Sherman to LVNV, "in accordance with the provisions of the Sale Agreement dated as of April 29, 2005 between [Sherman] and [LVNV] (the 'Agreement'), the Receivable Assets (as defined in the Agreement) identified in the Receivable File." [Docket No. 66.] LVNV has not provided this "Receivable File," which allegedly includes the Debtors' accounts, and this Court will not presume that the Debtors' accounts are included therein.

Under the above-described circumstances, the Court cannot decipher which "Chapter 13 Accounts" or "Receivable Assets" are being assigned, or that such ac-

---

**6.** In fact, counsel for the Debtor objected to the hearsay character of LVNV's submitted affidavits both in its written objection to LVNV's original proofs of claim and orally at the hearing.

counts include any of the Debitors' accounts.[7]

### c. Conclusion Regarding LVNV's Proof of Ownership

For the reasons stated above, LVNV has failed to prove by a preponderance of the evidence, that it is the present owner of claims 11, 12, 13, 14, and 18, as required by Texas law. Because the affidavits and documents filed by LVNV on August 5, 2008 were never offered at the hearing, they have no evidentiary value. Even if they had been offered, the Court would have sustained the Debtors' objections to their admission.[8] LVNV's affidavits contain inadmissible hearsay, and, in some cases, triple hearsay (i.e. statements by Ms. Emerson, an out of court declarant, based on information provided by Citibank, based on information provided by Sherman). This Court would also not have admitted LVNV's bills of sale because no foundation has been laid to except these documents from the hearsay rule. LVNV has the burden of proving ownership of its claims and was given ample opportunity to

do so at the August 18, 2008 hearing.[9] No evidence or testimony was adduced by LVNV at that hearing. Therefore, LVNV has failed to establish the validity of claims 11, 12, 13, 14, and 18 in the face of the Debtors' objections.[10]

### 2. Proof of the Underlying Contract

LVNV has also failed to meet its burden of proving that enforceable contracts existed between the Debtors and the original account issuers. First, none of LVNV's documents in support of its proofs of claim were ever offered into evidence. Second, even if LVNV's affidavits and bills of sale had been offered, the Court would have sustained an objection to their admissibility because they are all based on hearsay. Third, while the bills of sale submitted by LVNV hint that agreements existed between the Debtors and the original credit card issuers, these hints, by themselves, are insufficient to establish an enforceable contract under Texas law. *See, e.g., Preston State Bank*, 692 S.W.2d at 744 (affirming trial court's dismissal of a credit card issuer's contract claim where the issuer "failed to introduce the contract between

---

7. Although LVNV attached to its pleadings a redacted spreadsheet listing the Debtors' account information and balance, the Court will not presume that this is the same "Receivable File" described in the bill of sale between Sherman and LVNV; and this Court will also not presume that the spreadsheet submitted by LVNV came from the elusive "Disk" supplied to Sherman by Citibank. Indeed, the spreadsheet is untitled and its origin was never explained at the hearing or in, any of LVNV's affidavits, Neither were any of these documents offered into evidence.

8. The Debtors principally complain in their objections to LVNV's affidavits that the affidavits contain inadmissible hearsay and that LVNV did not lay a proper foundation for its bills of sale, which are also hearsay. [Docket No. 80–84.]

9. Indeed, LVNV had nearly a month following the initial hearing on July 21, 2008, to prepare for the August 18, 2008 hearing.

10. It could also be argued, persuasively, that LVNV's failure to provide evidence that it owns claims 22 through 28 deprives LVNV of standing in the Debtors' case. *See, e.g., Fla. Dept. of Ins. v. Chase Bank of Tex., N.A.*, 274 F.3d 924, 929–32 (5th Cir.2001) (holding that a receiver of insurance policies did not have standing because it failed to prove it was the assignee of the policyholders' claims); *Redmon v. Griffith*, 202 S.W.3d 225, 239 (Tex. App.-Tyler 2006, pet. denied) (holding that, for the purposes of standing to bring an action to recover on a contract, "[p]rivity is established by proving the defendant was a party to an enforceable contract with either the plaintiff or a party who assigned its cause of action to the plaintiff").

itself and [the debtor] or the terms and conditions thereof"). LVNV did not provide the original contracts, nor did it provide any evidence from which an enforceable contract could be gleaned.

For the reasons set forth above, LVNV failed to meet its burden of proving the validity of claims 11, 12, 13, 14, and 18 under Texas law.

### III. CONCLUSION

LVNV's burden of proof at this stage of the proceeding is greater than it was at the time of its initial filing because its claims have been contested. *See Fid. Holding,* 837 F.2d at 698. Even if admitted, the documents filed with the Clerk's office by LVNV on August 5, 2008 do not suffice to prove LVNV's ownership of its claims or that those claims are based on an enforceable contract under Texas law. However, these documents may have sufficed to establish *prima facie* validity had they been attached to LVNV's original proofs of claim. The point is this: LVNV could have availed itself of *prima facie* validity, avoided the strictures of the post-objection amendment process, and shifted the evidentiary burden to the Debtors had it correctly filed its proofs of claim to begin with. Instead, LVNV chose to disregard Rule 3001 and the instructions in Form 10 by not attaching any documents to its initial proofs of claim or by giving a written explanation why it could not do so. This omission permitted the Debtors to object without having to overcome any evidentiary hurdle, thereby requiring LVNV to meet a heavier burden of proof to establish the validity of its claims.

For the foregoing reasons, the Debtors' objections to LVNV's proofs of claim 11, 12, 13, 14, and 18 should be sustained. This Court reserves the right to make additional findings of fact and conclusions of law as it deems necessary and appropri-

ate. An order consistent with these findings of fact and conclusions of law shall be entered on the docket simultaneously with the entry of this opinion.